Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/07/2020 09:07 AM CDT

Shaun P. Olander, appellee,
v. Brandy A. McPhillips,
appellant.

___ N.W.2d ___

Filed June 30, 2020.    No. A-19-545.

1. **Visitation: Appeal and Error.** Parenting time determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.
2. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.
3. **Visitation.** The best interests of the children are the primary and paramount considerations in determining and modifying parenting time.
4. ____. The right of parenting time is subject to continual review by the court, and a party may seek modification of a parenting time order on the grounds that there has been a material change in circumstances.
5. **Modification of Decree: Words and Phrases.** In the context of marital dissolutions, a material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently.
6. **Trial: Records: Appeal and Error.** Where no record of an evidentiary hearing is made, the orderly administration of justice requires that the order be vacated and the matter remanded for a new evidentiary hearing on the record.
7. **Modification of Decree.** In order to modify a parenting plan, there must be a material change in circumstances that affects the best interests of the child.

Appeal from the District Court for Douglas County: DUANE
C. DOUGHERTY, Judge. Affirmed in part, and in part reversed
and remanded for further proceedings.

John F. Eker III, for appellant.

Justin A. Roberts, of Lustgarten & Roberts, P.C., L.L.O., for
appellee.

MOORE, Chief Judge, and RIEDMANN and WELCH, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Brandy A. McPhillips appeals the order of the district court
for Douglas County which granted Shaun P. Olander's com-
plaint to modify a decree of paternity and parenting plan and
denied her motion to vacate the modification order. We con-
clude that the district court's failure to hold an evidentiary
hearing on the record on the issue of child support requires
that we reverse, and remand for further proceedings on that
issue, and we reverse the revised transportation provision and
remand the cause with instructions to vacate and reinstate
the prior transportation provision. As to the remaining issues,
we affirm.

## BACKGROUND

Olander filed a complaint for paternity, a copy of which
is not included in our record. It appears that trial was set for
December 3, 2013; however, prior to trial, the parties reached
an agreement that was read into the record. Our bill of excep-
tions does not contain a transcription of that December 3
hearing. On January 7, 2014, McPhillips filed a motion for
clarification or to alter or amend the decree. In response,
Olander filed a motion to enter a decree of paternity which had
been prepared by his attorney, alleging that McPhillips refused
to approve the agreed-upon decree. Following a hearing on
January 15, a transcription of which is also not included in our
record, the court entered an order requiring certain changes

to the decree and clarifying and amending other portions. Specifically, the court ordered Olander to include the following language in the decree of paternity: "It is further ordered that beginning Saturday, January 25, 2014, and every fourth Saturday thereafter, [Olander's] mother shall have a superior right of first refusal versus [McPhillips] during times in which [Olander] is at his employment." A decree of paternity was entered the same day in February 2014, with approval signatures from both McPhillips and Olander. The decree incorporated the parties' agreed-upon parenting plan. We will refer to the court's decree of paternity and the February 2014 order collectively as the "Paternity Decree."

The Paternity Decree established that the parties were to have joint physical and legal custody of the parties' minor child, Macklin Olander, and required Olander to pay $515 per month in child support to McPhillips, among other provisions. In March 2014, the district court issued a nunc pro tunc order, stating that the parenting plan attached to the Paternity Decree was an earlier draft, and not the final version agreed to by the parties. The nunc pro tunc order attached a parenting plan (Parenting Plan) that both parties agreed was the true agreement.

The Parenting Plan established a 2-week parenting time schedule. On "Week 1," Olander had parenting time Tuesday at 8 p.m. until Thursday at 7 a.m., and then Friday at 7 p.m. until Saturday at 7 a.m. On "Week 2," Olander had parenting time from Wednesday at 7 a.m. until Thursday at 7 a.m., and from Friday evening until Sunday evening. The Parenting Plan also required Olander to provide the transportation during parenting time exchanges, except for on the weekends, when McPhillips was to pick up Macklin at the beginning of her parenting time.

In January 2018, Olander filed a complaint to modify the Paternity Decree and the Parenting Plan, stating that a material change in circumstances had occurred since the entry of the Paternity Decree and the Parenting Plan. Specifically,

Olander alleged that Macklin was in need of health insurance, and it was in his best interests that one of the parties be ordered to maintain health insurance for him. Additionally, Olander asserted that "[i]t is in the best interests of [Macklin] to change the parenting time schedule to provide [Olander] with more time with [Macklin]." Olander further alleged that certain terms of the Parenting Plan were no longer relevant, necessary, or workable and that the financial circumstances of the parties had changed to the extent it was necessary to modify Olander's child support obligation.

McPhillips filed a counterclaim seeking to modify the Paternity Decree and the Parenting Plan as well. She requested the court change the Parenting Plan to provide her with more parenting time, provide her with more vacation time with Macklin, and remove Olander's mother's right of first refusal one Saturday a month. The court held a trial on both parties' complaints to modify in October 2018.

Before trial, the parties reached several agreements regarding their modification requests. Those agreements were read into the record at trial, and consisted of the following: Olander agreed to provide health insurance for Macklin; the parties agreed to use Olander's 2017 tax return for purposes of determining his monthly income; they agreed to divide daycare expenses pursuant to the percentages determined by the child support calculator; they agreed to divide medical and other necessary expenses not covered by insurance; they agreed that each parent would get 2 weeks of vacation time with Macklin per year and, further, that Olander could not displace more than 4 days from McPhillips' parenting time; and they agreed that neither party would enroll Macklin in extracurricular activities that infringed on the other parent's parenting time.

At trial, the court stated that it was deciding "an issue or two on some of the parenting time." Olander testified that changing the parenting schedule every other week—granting him parenting time from Tuesday evening until Thursday

morning each week—would provide more consistency for Macklin. Olander further testified that Wednesday morning exchanges were difficult for Macklin, because it was confusing for him, and that it would be best to not have a different parenting schedule every other week. Olander testified that there had been a problem on Wednesday mornings with Macklin not being ready and fed when he arrived for pick up. Additionally, Macklin is rushed and tired due to getting up earlier for the morning exchange. Olander stated that having only one morning pick up per week would provide more consistency, rather than having two morning exchanges every other week.

McPhillips testified that there were problems in the past with Olander's picking up Macklin on Tuesday evenings, because Olander did not have a consistent work schedule. McPhillips further stated that it was not in Macklin's best interests to have her parenting time begin on Thursday mornings because he is tired and does not want to get ready for school after staying with Olander. Rather, she indicated that her parenting time should begin on Wednesday evening if Olander's was to begin on Tuesday evenings. Her justification was as follows:

> If the defendant is — or the plaintiff is allowed his Tuesday night pickup time to not have a morning rush and fight with our child, then I would like to be awarded the same, that I get a night pickup time to get him ready for bed and not have to fight with him in the mornings to get ready for school, so that it's fair for both of us.

The parties also provided testimony regarding health insurance for Macklin. Olander informed McPhillips' counsel that he would be providing health insurance for Macklin through his employer, but he did not have information stating what the benefits would be, and that he would provide more documentation before the final child support calculation. McPhillips acknowledged that Olander agreed to provide health insurance for Macklin and that Olander could choose the deductible and program that worked for him. Following the testimony, the

court stated that it looked for stability and routine in a child's time with each parent. The court then modified Olander's parenting time, stating that it would run from Tuesday evening until Thursday morning every week.

After trial, Olander drafted an order of modification. The order indicated, in relevant part, that he would pay $321 per month in child support, and it included a modified parenting plan (Modified Parenting Plan), which stated that he would have parenting time from Tuesday evening until Thursday morning every week. The Modified Parenting Plan also included a modified transportation clause, which stated that "[u]nless otherwise indicated . . . the party beginning parenting time shall provide transportation for the parenting time exchange." Further, the Modified Parenting Plan included the right of first refusal clause, which stated that "[e]very third Saturday, [Olander's] Mother shall have a superior right of first refusal versus [McPhillips] during times in which [Olander] is at his employment."

McPhillips filed an objection to Olander's order of modification. She argued that Olander unilaterally added language modifying the transportation clause and right of first refusal from what was stated in the Parenting Plan. McPhillips further alleged that Olander improperly calculated his child support obligation and that he did not include clauses regarding vacation and extracurricular activities. In November 2018, the district court modified the Paternity Decree and the Parenting Plan (Modification Order). The court's Modification Order established Olander's child support obligation to be $349 per month and ordered Olander to pay 75 percent and McPhillips 25 percent of various expenses. Otherwise, the court adopted Olander's Modified Parenting Plan, including the transportation and right of first refusal clauses.

In December 2018, McPhillips filed a motion to vacate the district court's Modification Order. In her motion, she alluded to a hearing held in chambers on November 27, at which "the judge was pressed for time and the parties attempted to

address the issues as expeditiously as possible." There is no transcription of this hearing in our record. McPhillips further asserted in her motion to vacate that the transportation clause and the right of first refusal clause of the Parenting Plan were modified, despite her not having agreed to those changes. McPhillips also argued that Olander's income was misrepresented and that he received a credit for health insurance for Macklin, although he was not providing insurance for him. Additionally, McPhillips filed a motion for relief from rest to present evidence to the court in support of the allegations contained in her motion to vacate.

The court held a hearing on McPhillips' motions in January 2019. At the hearing, the court stated:

> I got my old notes from some e-mails that came before that and what have you, and then we had a little bit of an informal hearing off the record at least after that, and then I signed a decree. And you brought up some of these issues — same issues, I think, and a decree was entered November 28th.

Olander's counsel argued that McPhillips' argument was based on the fact Olander's income changed after the trial and that he calculated child support appropriately before the trial. He further asserted that Olander was initially unable to sign up for health insurance for Macklin through his employer without a court order, because it was not an open enrollment period, but he obtained health insurance through the open market for that time period. Regarding the added language to the Modified Parenting Plan, Olander's counsel stated that McPhillips made the same objections to the court in November 2018, off the record, and the court already ruled on them, some in McPhillips' favor and some in Olander's.

At the close of the January 2019 hearing, the court stated that it was going to set the matter for an evidentiary hearing only on the issue of child support, which included evaluating the parties' income and whether Olander was providing health insurance for Macklin. The hearing took place on

March 6; however, we do not have a record of the hearing, although McPhillips' praecipe for a bill of exceptions specifically requested that it be included. Following the hearing, the district court denied McPhillips' motion to vacate the Modification Order. McPhillips timely appealed.

## ASSIGNMENTS OF ERROR

McPhillips assigns, restated, that the district court abused its discretion in modifying the Parenting Plan and erred in denying her motion to vacate the Modification Order.

## STANDARD OF REVIEW

[1,2] Domestic matters such as child support are entrusted to the discretion of trial courts. *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015). Parenting time determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *State on behalf of Maddox S. v. Matthew E.*, 23 Neb. App. 500, 873 N.W.2d 208 (2016). An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*. A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id*.

## ANALYSIS

McPhillips argues that the district court erred in modifying the Parenting Plan, and in denying her motion to vacate, in four ways: First, the district court erred in modifying the Parenting Plan to allow Olander to have parenting time from Tuesday evening until Thursday morning every week. Second, the district court erred in its child support calculation. Third, Olander unilaterally modified the transportation clause of the Parenting Plan when the parties did not agree to do so. Fourth, Olander unilaterally modified the right of first

refusal clause in the Parenting Plan. We address each argument separately below.

*Modification of Parenting Time.*

McPhillips argues that the district court erred in modifying the Parenting Plan by changing Olander's parenting time to begin on Tuesday evening instead of Wednesday morning, without modifying her parenting time to begin on Wednesday evening instead of Thursday morning. We find no abuse of discretion in the modification.

[3,4] Parenting time determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Schriner v. Schriner*, 25 Neb. App. 165, 903 N.W.2d 691 (2017). The best interests of the children are the primary and paramount considerations in determining and modifying parenting time. *Id*. The right of parenting time is subject to continual review by the court, and a party may seek modification of a parenting time order on the grounds that there has been a material change in circumstances. *Id*.

Here, the district court did not abuse its discretion in modifying Olander's parenting time. The original parenting plan provided Olander with parenting time from Tuesday at 8 p.m. to Thursday at 7 a.m. on Week 1 and from Wednesday at 7 a.m. to Thursday at 7 a.m. on Week 2. Olander testified that Macklin was not adjusting to the inconsistency in the weekly schedule and that it would be in his best interests if Olander's parenting time began on the same day each week. He explained that in addition to the inconsistency, Wednesday morning exchanges were chaotic because Macklin was rushed and was sleepier because he had to get up earlier. Olander therefore proposed that his parenting time each week begin on Tuesday evening. Thus, although not explicitly stated, Olander asserted that a material change in circumstances had occurred in that Macklin was struggling to adjust to the inconsistent parenting

schedule that was in place and that modifying the Parenting Plan was in Macklin's best interests.

[5] In modifying Olander's parenting time, the court stated, "I look for stability or routine in a child's time period with each parent . . . ." Although the court did not state that a material change in circumstances had occurred, it implicitly acknowledged that the existing parenting schedule was creating instability for Macklin. In the context of marital dissolutions, a material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Schriner v. Schriner, supra*. Therefore, Macklin's inability to adapt to the inconsistent schedule constituted a material change in circumstance. Because the inconsistency arose due to the difference in the start date of Olander's parenting time from Week 1 to Week 2, in order to make it consistent, the court had the option of changing the start time to either Tuesday evening or Wednesday morning. Because morning exchanges were challenging for Macklin, it made sense that the start date be moved to Tuesday evening. We find no abuse of discretion in that decision.

McPhillips claims that the court abused its discretion in refusing a reciprocal change in her parenting time to change her start time to Wednesday evenings instead of Thursday mornings. We disagree. Olander was seeking consistency because the start date for his parenting time varied each week from Tuesday evening to Wednesday morning and Macklin was struggling with that schedule. The start of McPhillips' parenting time, however, was consistently Thursday mornings. Furthermore, it appears the basis for McPhillips' request for a change in parenting time was "so that it's fair for both of us." The primary focus in a change of parenting time, however, is the child's best interests. We find no abuse of discretion in the court's refusal to modify McPhillips' parenting time.

*Child Support.*

McPhillips asserts that the district court erred in modifying Olander's child support obligation in its Modification Order and Modified Parenting Plan because there was not sufficient evidence demonstrating the amount of the health insurance premium he was paying. Because we do not have a record of the March 2019 hearing, we reverse the district court's child support calculation and remand the cause for further proceedings.

As we laid out in greater detail in the background section above, following the October 2018 trial and the November 2018 off-the-record hearing, the district court reduced Olander's child support obligation to $349 per month in its Modification Order. In her motion to vacate, McPhillips argued that Olander was not providing health insurance for Macklin and that the court erred in calculating Olander's child support. A hearing was held on the record in January 2019, at which McPhillips repeated her arguments that the court erred in calculating Olander's child support. Both the court and Olander acknowledged that McPhillips presented similar arguments at the November 2018 hearing and that the court already ruled on the issues. However, the court scheduled an evidentiary hearing for March 6 to address the issue of child support. We have no record before us of the hearing. Following the hearing, the court denied McPhillips' motion to vacate.

Based on the record available to us, it appears that the March 2019 hearing was an evidentiary hearing and therefore should have been on the record. See Neb. Ct. R. App. P. § 2-105(A)(1) (rev. 2018). McPhillips' motion for relief from rest requested that "she be granted relief from rest [and] that additional evidence as to the above stated items be allowed." At the close of the January 2019 hearing on her motion, the district court stated that it was going to set "an evidentiary hearing" solely on the issue of child support. It explained "I'm going to rehear evidence on what he makes, she makes,

and this health insurance issue, and we'll calculate child support appropriately."

The court's order denying McPhillips' motion to vacate states that "[t]he Court allowed the hearing to occur, thus the record was reopened for purposes of [McPhillips] providing further evidence as well as argument to the Court." We note that McPhillips requested a transcript of the March 2019 hearing in her praecipe for bill of exceptions and that one was not provided. We further note Olander's statement in his brief that "[n]either party requested a record" of the March hearing and his assertion that it was "incumbent [upon McPhillips] to present a record which supports" her assigned error. Brief for appellee at 11, 14. McPhillips concurs that there was no record from this hearing. However, the absence of a record from an evidentiary hearing does not necessitate an affirmance of the court's order.

Pursuant to § 2-105(A)(1), court reporting personnel "shall in all instances make a verbatim record of the evidence offered at trial or other evidentiary proceeding, including but not limited to objections to any evidence and rulings thereon, oral motions, and stipulations by the parties. This record may not be waived." Because the court stated that the March 2019 hearing was to be an evidentiary hearing, and the record was reopened to allow McPhillips to present further evidence on the issue of child support, we presume that the hearing was an evidentiary hearing and a record was required.

[6] Where no record of an evidentiary hearing is made, the orderly administration of justice requires that the order be vacated and the matter remanded for a new evidentiary hearing on the record. See *Gerdes v. Klindt's, Inc.*, 247 Neb. 138, 525 N.W.2d 219 (1995). See, also, *Presle v. Presle*, 262 Neb. 729, 634 N.W.2d 785 (2001); *Lockenour v. Sculley*, 8 Neb. App. 254, 592 N.W.2d 161 (1999). Consequently, we reverse the district court's order regarding child support and remand the cause to the district court to hold an evidentiary hearing, on the record, on the issue of child support, including the parties'

income and health insurance for Macklin. Because the March 2019 hearing was limited solely to the issue of child support, our decision does not affect McPhillips' remaining assigned errors, which we address below.

*Modification of Transportation Clause.*

McPhillips argues that the district court erred in modifying the transportation clause of the Parenting Plan. We agree.

The transportation clause in the Parenting Plan required Olander to provide the transportation during parenting time exchanges, except on the weekends, when McPhillips was to pick up Macklin at the beginning of her parenting time. This was modified in the Modified Parenting Plan to state that the parent beginning parenting time would provide transportation for the exchange. Our record does not disclose how this change was determined.

At the October 2018 trial, the agreements the parties reached prior to trial were read into the record. There is nothing stated on the record regarding transportation, although Olander contends in his brief that the parties agreed to modify the clause prior to trial.

McPhillips contested the change in transportation prior to the November 2018 hearing in her objections to the entry of an order of modification filed on November 26 and 27, asserting that she never agreed to it. McPhillips also raised the transportation issue in her motion to vacate after the Modification Order was entered. In that motion, she admits that the transportation issue was addressed at the hearing in chambers in November. As to transportation, she alleged:

> The attorney for [Olander] failed to address the following issues which were discussed in chambers:
>
> . . . .
>
> b. Transportation was modified when this was not part of the agreement and not contained in the Transcript. The Judge indicated that this was what he would normally allow, as stated in the order signed by the judge, however,

discussions with [McPhillips] after the shortened hearing indicated that there were substantial reasons why the initial transportation language had been included.

At the January 2019 hearing on that motion, Olander asserted that the court had already ruled on the issue. The court stated that it had reviewed its notes and communications and that McPhillips was raising some of the "same issues." It allowed McPhillips to argue, after stating, "So go ahead and — I think I already made a decision on these matters, but go ahead and tell me again today what you would like to tell me." Therefore, the record supports a conclusion that the court initially addressed the issue either in chambers prior to the October 2018 trial or in chambers at the November hearing. There is no indication that evidence was received at either of those hearings, and it was not part of the stipulation read into the record at the October 2018 hearing as a matter to which the parties agreed.

[7] In order to modify a parenting plan, there must be a material change in circumstances that affects the best interests of the child. See *Eric H. v. Ashley H.*, 302 Neb. 786, 925 N.W.2d 81 (2019). Here, the district court found a material change in circumstances that warranted a modification of the Paternity Decree and the Parenting Plan; however, in addition to modifying provisions on which the parties agreed or on which evidence was received, the court also modified the transportation provision. We recognize that under certain circumstances, a change in parenting time may necessitate a change in transportation; however, we find no such circumstance here. The primary change as to parenting time was to move the start time of Olander's parenting time from Wednesday at 8 a.m. to Tuesday at 8 p.m. It does not appear from our record that the parties agreed to a change regarding transportation or that the court heard evidence as to why such a change was in the child's best interests. Absent such information, we find that the change in the transportation provision constituted an abuse of discretion, and we reverse that portion

of the Modified Parenting Plan and remand the cause to the district court with instructions to reinstate the provision as written in the Parenting Plan attached to the court's order nunc pro tunc filed March 10, 2014.

*Right of First Refusal Clause.*

McPhillips further asserts that the district court erred in modifying the right of first refusal clause of the Parenting Plan. We disagree.

As stated in the background section above, the Paternity Decree granted Olander's mother a right of first refusal versus McPhillips to watch Macklin every fourth Saturday during which Olander was at work. McPhillips asserts that the nunc pro tunc order and the attached Parenting Plan, which did not include the right of first refusal for Olander's mother, super-seded the Paternity Decree. Therefore, according to McPhillips, the inclusion of the right of first refusal in the Modified Parenting Plan was a modification which the court included in error. We disagree.

The terms of the nunc pro tunc order state that it modified only the Parenting Plan attached to the Paternity Decree; there-fore, it did not modify the terms of the Paternity Decree. Our reasoning is buttressed by McPhillips' counterclaim, in which she states, "[Olander's] mother shall no longer be required to receive one Saturday each month with [Macklin]." This language indicates to us that the parties were operating under the terms of the Paternity Decree which granted Olander's mother a right of first refusal versus McPhillips. Consequently, the right of first refusal for Olander's mother was properly included in the Modified Parenting Plan because it was carried over from the Paternity Decree.

We acknowledge that the right of first refusal in the Paternity Decree was for every fourth Saturday, whereas the right of first refusal in the Modified Parenting Plan was for every third Saturday. However, McPhillips states in her brief that the language in the Modified Parenting Plan "mirrors language

that was in the original Parenting plan attached to the original Decree of Paternity." Brief for appellant at 17. Because she takes no issue with the change in Saturdays on which Olander's mother has the right of first refusal, we do not address this discrepancy. Thus, the district court did not abuse its discretion by including the right of first refusal clause in the Modified Parenting Plan.

## CONCLUSION

For the reasons set forth above, we reverse the provisions of the Modification Order regarding child support and transportation and remand the cause for further proceedings consistent with this opinion. We affirm on all other issues.

Affirmed in part, and in part reversed and remanded for further proceedings.