IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

ESSINK V. ESSINK

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

TIFFANY A. ESSINK, NOW KNOWN AS TIFFANY A. BOLISH, APPELLEE,

V.

ETHAN D. ESSINK, APPELLANT.

Filed August 2, 2022.    No. A-21-830.

Appeal from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Affirmed.

Laura A. Lowe, P.C., for appellant.

No appearance for appellee.

PIRTLE, Chief Judge, and BISHOP and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Ethan D. Essink appeals from the Lancaster County District Court's order on his complaint to modify child custody and his application for an order to show cause based on the failure of Tiffany A. Essink, now known as Tiffany A. Bolish, to abide by the terms of the parties' parenting plan. For the reasons stated herein, we affirm.

## II. STATEMENT OF FACTS

Ethan and Tiffany were married in 2012 and had one child, Dalton James Dean Essink, who was born in 2013. The parties' marriage was dissolved by dissolution decree entered by the Lancaster County District Court in December 2014. The court's order, which was entered pursuant to a stipulated agreement, awarded the parties joint legal custody of Dalton with primary physical custody awarded to Tiffany. Ethan was granted parenting time starting at 4:30 p.m. every other Tuesday until the following Monday morning. Additionally, Ethan was ordered to pay $130 in

- 1 -

monthly child support and was granted a $1,143 judgment against Tiffany for daycare expenses. Under the terms of the parenting plan, the parties were required to, among other things, include the other parent in decision-making, cooperate, and refrain from disparaging each other. The plan provided in part:

> [Tiffany] and [Ethan] shall both share, to a reasonable and practical extent, the rights and decision-making responsibilities of raising the minor child. [Tiffany] and [Ethan] both should remain active and involved in parenting the minor child. In order to accomplish this, [Tiffany] and [Ethan] will inform the other, reasonably in advance and in appropriate detail, and then fully consult with each other on all issues and all phases of the minor child's health, education, extracurricular, social and physical development and religious upbringing regarding events in the life of a child which are not decisions of the moment and have longer-term consequences.
>
> . . . .
>
> Recognizing the importance that mutual participation and cooperation play in nurturing the child in a stable, loving environment, the parties shall, in an effort to foster this environment, notify the other at a meaningful time in advance of any decision regarding enrollment in school, the commencement of participation in religious activities and in advance of the commencement of health-care professional-parent relationship with the child, in order to learn both parties' wishes in these matters. The parties shall freely discuss these three areas with one another, in an effort to reach a consensus on these issues. . . .
>
> The child's best interests require the utmost cooperation between the parties. To this end, neither party shall disparage the other or in any way denigrate the other party, in any activity or communication involving their child.

In December 2020, Ethan filed a complaint for modification of the dissolution decree requesting sole legal and physical custody of Dalton. In his complaint, Ethan alleged that a substantial and material change in circumstances had occurred which affected Dalton's best interests including that Tiffany had arranged for therapeutic services for Dalton without first consulting Ethan, refused to keep Ethan apprised of Dalton's therapy appointments, limited Ethan's access to Dalton's therapist, and refused to provide Ethan with medications prescribed for Dalton; that Tiffany had "repeatedly disparaged and denigrated [Ethan] in public communications and in communications involving [Dalton]"; that Tiffany had "unreasonably refused to cooperate with [Ethan] in allowing [Ethan's] parents to facilitate the parenting time transitions, while demanding her representatives be allowed to facilitate transitions on her behalf which has created conflict in the presence of the minor child"; that Tiffany has unstable housing and has moved numerous times since the entry of the dissolution decree; that Tiffany is involved in a relationship in which Dalton has been subjected to inappropriate discipline; that Tiffany failed to provide a safe and stable home for Dalton; and that Dalton wishes to spend more time with Ethan. Ethan further requested that the court review and modify child support.

On the same date, Ethan also filed an application for an order to show cause why Tiffany should not be held in contempt for her willful violation of the dissolution decree and parenting plan. Ethan asserted that Tiffany willfully violated the provisions of the parenting plan by, inter

alia, failing to make any payments on the $1,143 judgment against her for daycare expenses. The court entered an order to show cause which was heard at the same time as the modification hearing in August 2021.

Evidence at the hearing established that, after operating under the parenting plan without issue for about two years, the parties began having disagreements over pick-up times, locations, and individuals who were permitted to pick up Dalton from school. Due to the location of Dalton's elementary school, the parties relied on family and friends to help facilitate school pick up. Additionally, Dalton was diagnosed with AD/HD and was placed on medication. The parties also began having difficulty with communicating important school and medical concerns and ensuring that each parent had access to Dalton's medications and other items.

Tiffany determined that it was best to keep Dalton in the same school since they were familiar with him and his behaviors. However, Ethan stated that he was unable to get information from Tiffany and the school did not contact him when there was an issue. After contacting the school, Ethan learned that he was not listed as a contact, but rather Tiffany's fiancé and father were the other contacts listed. Ethan also learned that Tiffany arranged for Dalton to begin seeing a therapist without discussing it with him first and refused to provide Ethan with the therapist's contact information or to include Ethan in the therapy sessions so both parties could address Dalton's behavioral needs. Ethan also asserted that Tiffany changed Dalton's primary doctor without discussing the change with Ethan first. Although Dalton was prescribed daily medications, the parties were unable to cooperate in order to ensure Dalton took his medication. Ethan testified that Tiffany failed to ensure that Dalton had his medications with him during Ethan's parenting time. He asserts that this led to Dalton's doctor assisting the parties in reach an agreement with the school for the school to provide the medications each morning. However, despite the agreement, the parties continued to have difficulties as the medication was not provided to the school on occasions. In addition to the medication, Ethan indicated that Tiffany would not send Dalton's school Chromebook during Ethan's parenting time which Dalton needed to complete homework, making it difficult for Ethan to continue to work with Dalton on his math and reading.

The parties contacted child protective services (CPS) on each other on multiple occasions. Ethan testified that he reported concerns relating to Tiffany's disciplinary measures in her home. He asserts that Tiffany and her fiancée required Dalton to kneel on the hard floor for a long period of time which left marks on his skin and caused Dalton a lot of pain. Further, Ethan indicated that he has called CPS as it related to Tiffany and her fiancée's care of Dalton because he believed Tiffany's fiancée hit Dalton repeatedly in the head. Tiffany likewise expressed concerns related to Ethan's parenting and called CPS on Ethan on numerous occasions. Ethan admits that he was previously involved with CPS after his prior roommate's daughter inappropriately touched Dalton. However, he asserted that he reported the issue to Tiffany and no further CPS action was taken after the roommate and the child left the home. The parties both indicated that no additional CPS reports have been substantiated.

On September 16, 2021, the district court overruled Ethan's complaint to modify to the extent that Ethan sought legal and physical custody and continued joint legal custody but provided Tiffany with final decision-making as to Dalton's health, education, and religious upbringing. The court further continued physical custody with Tiffany subject to Ethan's parenting time but adjusted the parenting time schedule. Specifically, the court found:

Due to the concerns stated above, the Court finds it is in the best interest of the child that the parenting plan be modified to reduce [Ethan's] parenting time to a 10/4 schedule. [Ethan] has moved out of town and currently lives in Bennett with his parents, forty-five minutes away from the child's school. Should [Ethan] have difficulty getting Dalton to and from school, he may be assisted by one or both of his parents, as necessary. The Court also finds it is in the best interest of the child that the parenting plan be modified to contain a safety provision prohibiting [Ethan] from consuming alcohol and prohibiting both parents from consuming any controlled substances during parenting time with the child. The parties shall communicate exclusively through the use of talkingparents.com. The parenting plan should also be adjusted to help reduce the contact between the parties and ensure that both parties can transfer the child with the help of family members or significant others when needed.

The parties are to pick up the child primarily from his school or daycare to begin their parenting time and can designate up to three individuals who can transport the child in the event they are unavailable. The Court finds that a decrease in transitions between these two parties would be in everyone's best interest and that the Modified Parenting Plan, attached hereto, is fair, reasonable, in compliance with the Nebraska Parenting Act, and in Dalton's best interests. The parties are ordered to follow the same.

The court also increased Ethan's child support obligation to $324 per month due to changes in the parties' incomes and the parenting time schedule. The court stated:

Evidence received at trial shows that the parties' incomes have changed. [Tiffany] is now a stay-at-home mom. [Ethan] testified that he is employed at $12.50 per hour. He submitted child support calculations based on his monthly income and imputed a monthly amount to [Tiffany] commensurate with her earning $10 per hour. Those calculations take into account an order requiring him to pay $693 per month for two subsequent children. The Court cannot allow a modification of child support based on a subsequent child support order. Section 4-220 of the Child Support Guidelines state[s]: "An obligor shall not be allowed a reduction in an existing support order solely because of the birth, adoption, or acknowledgment of subsequent children of the obligor; however, a duty to provide regular support for subsequent children may be raised as a defense to an action for an upward modification to such existing support order."

The Court notes that the original decree allowed for a significant reduction in child support by using a joint calculation (which resulted in $130 per month) instead of a straight child support calculation (which would have resulted in $411 per month) due to [Ethan] having the child on an 8/6 basis. The Modified Parenting Plan now orders a 10/4 schedule based on [Ethan's] issues with drugs and alcohol, thus no reduction should be used. Based on the income figures submitted by [Ethan], [his] child support obligation according to the Child Support Guidelines should now be $324 per month. The Court notes that this is also more in accord with [Ethan's] obligation to his two children in the Sarpy County District Court case.

The court also vacated Ethan's order to show cause based upon its determination that Ethan did not prove by clear and convincing evidence that Tiffany had willfully violated the decree or parenting plan. Ethan has timely appealed to this court.

## III. ASSIGNMENTS OF ERROR

Ethan assigns that the district court erred in (1) failing to award him sole legal and physical custody; (2) decreasing his parenting time; (3) increasing his child support obligation including refusing to consider the subsequent child support order for his two other minor children and failing to award him an abatement during the summer months when Dalton is in his physical care and custody 50 percent of the time; and (4) failing to find Tiffany in willful contempt of court for her failure to timely pay the judgment for childcare expenses.

## IV. STANDARD OF REVIEW

Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed by an appellate court de novo on the record and will be affirmed absent an abuse of discretion. *Keiser v. Keiser*, 310 Neb. 345, 965 N.W.2d 786 (2021).

When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than the other. *Id*.

Interpretation of the Nebraska Child Support Guidelines presents a question of law, regarding which an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Gress v. Gress*, 274 Neb. 686, 743 N.W.2d 67 (2007).

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) trial court's resolution of issues of law is reviewed de novo, (2) trial court's factual findings are reviewed for clear error, and (3) trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion. *Becher v. Becher*, 311 Neb. 1, 970 N.W.2d 472 (2022).

## V. ANALYSIS

### 1. CUSTODY

Ethan first argues that the district court erred in failing to grant him sole legal and physical custody of Dalton.

Nebraska courts have continuously applied a two-step process in modification proceedings in that:

> Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing either that the custodial parent is unfit or that the best interests of the child require such action. We have described this showing as a two-step process: First, the party seeking modification must show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the child. Next, the party seeking modification must prove that changing the child's custody is in the child's best interests.

*Jones v. Jones*, 305 Neb. 615, 626-27, 941 N.W.2d 501, 510-11 (2020). A material change in circumstances "is the occurrence of something which, had it been known to the marital dissolution court at the time of the initial decree, would have persuaded the court to decree differently." *Weaver v. Weaver*, 308 Neb. 373, 391, 954 N.W.2d 619, 632 (2021). The finding of a material change of circumstances is a prerequisite to a modification of a child custody award. *Id.*

Further, in determining custody and parenting arrangements, a court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of the relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing, the desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning, the general health, welfare, and social behavior of the minor child, credible evidence of abuse inflicted on any family or household member, and credible evidence of child abuse or neglect or domestic intimate partner abuse. Neb. Rev. Stat. § 43-2923(6) (Reissue 2016); *Wolter v. Fortuna*, 27 Neb. App. 166, 928 N.W.2d 416 (2019).

Here, in its order pertaining to Ethan's request for a modification of child custody, the district court stated:

> The Court finds the relationship between the parties is troubling and that both parties bear responsibility for the communication problems. [Ethan] has failed to show that [Tiffany] is unfit as a parent and that it would be in the best interest of the child to change custody. Thus, the Court cannot find that there has been a change in the material circumstances of the parties which would warrant a change in custody.

Ethan urges that in looking at the best interests factors, it was an abuse of discretion to find that there was no material change in circumstances affecting Dalton's best interests and in finding that Dalton's best interests did not warrant a change in custody. We disagree.

From our review of the record, we find the parties lack of communication and cooperation troubling. We have previously recognized that appellate review of joint legal custody issues has often focused on the parties' ability to communicate. See *State ex rel. Maddox S. v. Matthew E.*, 23 Neb. App. 500, 873 N.W.2d 208 (2016). However, appellate courts review custody decisions for an abuse of discretion and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.* In affording such deference to the trial courts, appellate courts in some instances decline to reverse trial court decisions where joint custody has been awarded or maintained even when the evidence demonstrates a lack of communication or cooperation between parents. *Id.*

In *State on behalf of Jakai C. v. Tiffany M.*, 292 Neb. 68, 871 N.W.2d 230 (2015), the Nebraska Supreme Court affirmed the district court's denial of a father's complaint to modify custody because the evidence adduced at the modification trial did not establish a material change in circumstances since the entry of the decree warranting a change in custody. We see that case as somewhat analogous to the case at bar in that it involved claims by the father of interference with matters affecting parenting time, consultation on medical issues, issues with the parents' ability to communicate, and issues governing the mother's disparagement of the father. In analyzing the issues, the Nebraska Supreme Court stated:

Upon our de novo review of the record in this case, we agree that the evidence adduced at the modification trial did not establish a material change in circumstances since the entry of the decree warranting a change in custody. At trial, both [the father] and [the mother] presented conflicting evidence concerning their own parenting strengths and the weaknesses of the other parent. Both parties showed that they are employed and that they love and are able to care for Jakai. Regarding why he believed custody of Jakai should be modified, [the father] presented evidence that [the mother] had interfered with his parenting time on various occasions, and the record showed that she had earlier been held in contempt for such interference. However, the record also showed, as noted by the district court, that in the year prior to the modification trial, [the mother] had addressed this problem and adhered to the parenting time schedule. In determining whether the custody of a minor child should be changed, the evidence of the custodial parent's behavior during the year or so before the hearing on the motion to modify is of more significance than the behavior prior to that time. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015); *State on behalf of Dawn M. v. Jerrod M.*, 22 Neb. App. 835, 861 N.W.2d 755 (2015).

[The father] testified that [the mother] made disparaging remarks about him on social media, and we agree with the district court that this is concerning. But the record did not show that this disrespect was communicated to the child or affected him up to the point of trial. The record shows that [the father] claimed that [the mother] did not adhere to [the father's] right of first refusal and failed to consult with him on decisions regarding Jakai's medical treatment and daycare. However, [the mother] presented contrary evidence regarding [the father's] failure to communicate effectively about decisions regarding Jakai and that [the father] had not requested any additional parenting time with Jakai through his right of first refusal.

*State on behalf of Jakai C. v. Tiffany M.*, 292 Neb. at 86, 871 N.W.2d at 242-43.

Similarly, in this case, the parties presented conflicting testimony regarding the strengths and weaknesses of the other parent and their rationales for individual instances of conduct. As to conflicting reports of conduct that led the parties to make CPS reports, we note that no such reports led to ongoing case management or court intervention. And even though communication and cooperation deteriorated after the first two years following the entry of the dissolution decree, the court noted that the parties' refusal to allow family members help with transitioning Dalton was reciprocal and we see efforts by Tiffany to address Ethan's concerns such as working with Dalton's doctor to develop a plan to provide Dalton's medication directly to the school so school staff could assist in the administration of the medication. Although Ethan claimed that Tiffany made therapy decisions without informing him, Tiffany indicated that she arranged for therapy with her and Dalton so she could address Dalton's behaviors in her home. The court also found Tiffany's reasoning for not sending the Chromebook to Ethan's house credible and reasonable. Further, although Ethan claimed that Tiffany's housing situation is unstable, the court found that Tiffany had resided in the same home for the past two years and that Ethan had moved a number of times himself. As to Ethan's claim that Tiffany disparaged him on her private Facebook account in direct defiance of the court's decree, we find this behavior reprehensible and caution her that such behavior could lead to future court intervention. However, as in *State on behalf of Jakai C. v.*

*Tiffany M.,* 292 Neb. 68, 871 N.W.2d 230 (2015), based upon our review of the evidence adduced at the modification hearing, we do not see that this disrespect was communicated to the child or affected him up to the point of the modification hearing. As a result of these collective findings, the court found that Ethan failed to show that Tiffany was unfit or that it would be in Dalton's best interests to change custody to Ethan.

Given the record in this case and given our standard of review and deference to the trial court's determinations with respect to the credibility of the witnesses, we cannot say that the court abused its discretion in denying Ethan's request to modify custody. Accordingly, this assignment of error fails.

## 2. PARENTING TIME

Ethan next argues that the district court erred in modifying the parties' parenting plan by reducing his parenting time beyond what Tiffany requested in her responsive pleading; finding a material change in circumstances because Ethan moved 45 minutes away from Dalton's school and because of Ethan's issues with drugs and alcohol; and in finding that the reduction of his parenting time was in Ethan's best interests.

In order to modify a parenting plan, there must be a material change in circumstances that affects the best interests of the child. *Olander v. McPhillips*, 28 Neb. App. 559, 947 N.W.2d 578 (2020). Once the court determines that a material change in circumstances warrants a modification of the parenting plan, a trial court has discretion to set a reasonable parenting time schedule. *Wolter v. Fortuna*, 27 Neb. App. 166, 928 N.W.2d 416 (2019). The determination of reasonableness of a parenting plan is to be made on a case-by-case basis. *Id*. Parenting time relates to continuing and fostering the normal parental relationship of a noncustodial parent. *Id*. The best interests of the children are the primary and paramount considerations in determining and modifying visitation rights. *Id*. Generally, a reasonable visitation schedule is one that provides a satisfactory basis for preserving and fostering a child's relationship with the noncustodial parent. *State ex rel. Pathammavong v. Pathammavong*, 268 Neb. 1, 679 N.W.2d 749 (2004). The right of parenting time is subject to continual review by the court, and a party may seek modification of a parenting time order on the grounds that there has been a material change in circumstances. *Olander v. McPhillips, supra.*

In response to Ethan's motion to modify, Tiffany requested her own modification to the prior decree in the form of a request to change the parenting plan. Although not specifically articulated by the court, we read the court's order as having found a material change in circumstances occurred due to concerns urged by Tiffany in connection with her request to reduce Ethan's parenting time. In reducing Ethan's parenting time, the court stated:

> As stated by Tiffany's attorney, "[Ethan's] entire case is a matter of projection, where he is guilty of all of the things he accuses [Tiffany] of doing." Indeed, [Ethan] has only succeeded in highlighting his shortcomings as a parent to Dalton, not to mention his other three children, and his serious issues with drugs and alcohol.
>
> . . . .
>
> Due to the concerns stated above, the Court finds it is in the best interest of the child that the parenting plan be modified to reduce Defendant's parenting time to a 10/4 schedule.

The court further ordered that the 10/4 parenting time schedule was suspended during the summer months and awarded the parties alternating weeks during that time.

Based on our de novo review of the record, we first find that the court did not err in finding that Ethan's behavior since the entry of the dissolution decree constituted a material change in circumstances affecting Dalton's best interests. In doing so, the court expressed grave concerns associated with Ethan's reported abuse of alcohol and drugs. In arguing that this behavior did not constitute a material change, Ethan contends that the basis for those claims stems from the testimony of his former girlfriend which the court should have found was not credible. But in hearing the ex-girlfriend's testimony governing the quantity of alcohol consumed by Ethan and that it was she and not Ethan that cared for Dalton while they were dating, when considered with Ethan's own admission that he drinks daily and was recently charged with DUI, the court found that the testimony was credible, and that Ethan's behaviors posed additional risks to Dalton. In reviewing this finding, which includes the district court's finding that the testimony of Ethan's ex-girlfriend was credible, while giving weight to the fact that the court heard and observed the witnesses and their testimony when the evidence is in conflict, we find that the court did not err in finding that Ethan's development of a serious issue with alcohol constituted a material change in circumstances affecting Dalton's best interests which warranted a change in the parties' parenting plan. This assignment of error fails.

### 3. Child Support

Ethan's third assignment of error is that the district court erred in modifying his child support obligation. Regarding this assigned error, Ethan asserts that the district court erred in failing (a) to consider whether the facts warranted a deviation from the child support guidelines based upon a subsequent child support order for his two other minor children and (b) to abate the child support during the summer months when he has physical custody of Dalton 50 percent of the time.

A party seeking to modify a child support order must show a material change in circumstances that (1) occurred subsequent to the entry of the original decree or previous modification and (2) was not contemplated when the decree was entered. *Hodgen v. Hodgen*, 30 Neb. App. 456, 970 N.W.2d 782 (2022). The party seeking the modification of child support has the burden to produce sufficient proof that a material change of circumstances has occurred that warrants a modification and that the best interests of the child are served thereby. *Keiser v. Keiser*, 310 Neb. 345, 965 N.W.2d 786 (2021). Among the factors to be considered in determining whether a material change of circumstances has occurred warranting modification of a child support order are changes in the financial position of the parent obligated to pay support, the needs of the children for whom support is paid, good or bad faith motive of the obligated parent in sustaining a reduction in income, and whether the change is temporary or permanent. *Hodgen v. Hodgen, supra*.

In general, child support payments should be set according to the Nebraska Child Support Guidelines. *State on behalf of Nathaniel R. v. Shane F.*, 30 Neb. App. 797, 973 N.W.2d 191 (2022). Neb. Ct. R. § 4-203 provides in part:

> The child support guidelines shall be applied as a rebuttable presumption. All orders for child support obligations shall be established in accordance with the provisions of the

guidelines unless the court finds that one or both parties have produced sufficient evidence to rebut the presumption that the guidelines should be applied. All stipulated agreements for child support must be reviewed against the guidelines and if a deviation exists and is approved by the court, specific findings giving the reason for the deviation must be made. Findings must state the amount of support that would have been required under the guidelines and include a justification of why the order varies from the guidelines. Deviations must take into consideration the best interests of the child. In the event of a deviation, the reason for the deviation shall be contained in the findings portion of the decree or order, or worksheet 5 should be completed by the court and filed in the court file.

Additionally, Neb. Ct. R. § 4-217 provides:

Application of the child support guidelines which would result in a variation by 10 percent or more, but not less than $25, upward or downward, of the current child support obligation, child care obligation, or health care obligation, due to financial circumstances which have lasted 3 months and can reasonably be expected to last for an additional 6 months, establishes a rebuttable presumption of a material change of circumstances.

In his complaint to modify custody, Ethan requested the court adjust his child support obligation in conjunction with his request for sole legal and physical custody and, in her answer and responsive pleading, Tiffany requested a modified parenting plan "together with such other relief as the Court may deem just and equitable." Having found that Ethan's abuse of alcohol constituted a material change requiring a modification of the parenting time schedule, the court modified the parties' 8/6 visitation schedule to a 10/4 visitation schedule. As a result of the modification of the parenting time schedule and a change in the parties' incomes, the court then turned to the issue of adjusting Ethan's child support obligation.

At the time that the dissolution decree was entered, Ethan earned $1,733 monthly. At the time of the modification hearing, Ethan was earning $2,083 monthly and Tiffany was a stay-at-home mother. After reviewing the Nebraska Child Support Guidelines, the court increased Ethan's support obligation from $130 to $324 per month. Ethan assigns error to the court's failure to deviate from the guidelines to award a deduction due to a subsequent child support obligation for two children from another relationship and the court's failure to abate his support obligation for the summer months in which Ethan had nearly equal parenting time. We discuss these claims of error independently.

(a) Credit for Subsequent Child Support

Ethan claims that the district court erred in failing to award him a child support credit for child support ordered for two subsequently born children.

The Nebraska Child Support Guidelines provide, in certain circumstances, that "[s]ubject to § 4-220, credit may be given for biological or adopted children for whom the obligor provides regular support." Neb. Ct. R. § 4-205(E) (rev. 2016). The limitation set forth in Neb. Ct. R. § 4-220 provides:

An obligor shall not be allowed a reduction in an existing support order solely because of the birth, adoption, or acknowledgment of subsequent children of the obligor;

however, a duty to provide regular support for subsequent children may be raised as a defense to an action for an upward modification of such existing support order.

"Accordingly, the child support guidelines allow the obligor of an existing support award a deduction for an obligation to support a subsequent child only when the obligee seeks an upward modification of support." *Fetherkile v. Fetherkile*, 299 Neb. 76, 95, 907 N.W.2d 275, 292 (2018). Here, the court reviewed and modified child support based upon Ethan's request set forth in his complaint for modification. Because Tiffany, the obligee, did not seek an upward modification of Ethan's child support obligation, Ethan was not entitled to credit under § 4-205(E). This claim fails.

(b) Abatement

Ethan also argues that the court erred in refusing to abate the support obligation during the summer months when Dalton was with him 50 percent of the time.

The Nebraska Child Support Guidelines indicate that abatement of a child support obligation may be appropriate during periods of extended parenting time under Neb. Ct. R. § 4-210.

It has long recognized that the child support guidelines offer flexibility and guidance, with the understanding that not every child support scenario will fit neatly into the calculation structure. *Keiser v. Keiser*, 310 Neb. 345, 965 N.W.2d 786 (2021). It is not suggested that an appropriate child support and expense order may be found to be accurate to the penny by applying the suggested guidelines. *Id*. Under the guidelines, a deviation is permissible whenever application of the guidelines in an individual case would be unjust or inappropriate. *Id*.

Specifically, the child support guidelines under Neb. Ct. R. § 4-210 carves out a specific adjustment in the calculation as it relates to the amount of visitation or parenting time. It states:

> Visitation or parenting time adjustments or direct cost sharing should be specified in the support order. If child support is not calculated under § 4-212, an adjustment in child support may be made at the discretion of the court when visitation or parenting time substantially exceeds alternating weekends and holidays and 28 days or more in any 90-day period. During visitation or parenting time periods of 28 days or more in any 90-day period, support payments may be reduced by up to 80 percent. The amount of any reduction for extended parenting time shall be specified in the court's order and shall be presumed to apply to the months designated in the order. Any documented substantial and reasonable long-distance transportation costs directly associated with visitation or parenting time may be considered by the court and, if appropriate, allowed as a deviation from the guidelines.

Although the Guidelines provide that support payments may be reduced by up to 80 percent when there are visitation or parenting time periods of 28 days or more in any 90-day period, that determination is made using the trial court's discretion. Although Ethan will incur additional expenses during the summer months, Tiffany's costs in maintaining Dalton's permanent home remain unchanged. Therefore, we cannot say that it was an abuse of discretion for the court to fail to provide Ethan with an abatement of his child support obligation during the summer months. This assignment fails.

## 4. CONTEMPT

Ethan's final assignment of error is that the district court abused its discretion in finding that Tiffany was not in willful contempt of the dissolution decree due to her failure to timely pay the judgment for daycare expenses.

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) trial court's resolution of issues of law is reviewed de novo, (2) trial court's factual findings are reviewed for clear error, and (3) trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion. *Becher v. Becher*, 311 Neb. 1, 970 N.W.2d 472 (2022).

When a party to an action fails to comply with a court order made for the benefit of the opposing party, such act is ordinarily a civil contempt, which requires willful disobedience as an essential element; "willful" means the violation was committed intentionally, with knowledge that the act violated the court order. *Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012). Outside of statutory procedures imposing a different standard or an evidentiary presumption, the complainant must prove all elements of civil contempt by clear and convincing evidence. *Becher v. Becher, supra*.

In vacating the order to show cause against Tiffany, the district court stated that "there were no facts proven at trial which would prove, by clear and convincing evidence, that [Tiffany] is in contempt of the Court's orders." We agree. The evidence adduced at the hearing shows that, pursuant to the decree, a judgment was entered against Tiffany for $1,143 for daycare expenses. In February 2015, the parties informally agreed to an arrangement where the child support payments would be reduced each month upon the court's receipt of a notarized document signed by Tiffany for an amount the parties agreed to each month. The parties complied with the informal arrangement until June 2016, at which time, Ethan asserted that a total of $545 was receipted towards his child support obligation. Ethan stated that attempting to get the receipts and turning them into the court became too much of a hassle, and therefore they discontinued the arrangement. Thereafter, no further reductions were made, and Tiffany did not make any direct payments to Ethan. The court found that the evidence corroborated Ethan's testimony and ordered Ethan file a partial satisfaction of judgment for $545 and ordered Tiffany to pay the remaining amount of $598 plus 2.041 percent interest in payments to the clerk's office. However, the court found that the evidence did not support a finding of contempt. Because it appears that the parties were satisfying the judgment albeit in an informal arrangement, and Ethan believed it to be too much of a hassle and discontinued turning in the receipts, we find no error in the court's determination that this did not amount to a finding of willful or malicious disobedience of the decree. Therefore, this assignment fails.

## VI. CONCLUSION

Having considered and rejected Ethan's assigned errors, we affirm the district court's order in its entirety.

AFFIRMED.