Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/12/2022 08:07 AM CDT

Justin J. Winkler, appellant, v.
Crystal R. Winkler, now known as
Crystal R. Werner, appellee.

___ N.W.2d ___

Filed July 5, 2022.    No. A-21-467.

1. **Modification of Decree: Child Custody: Visitation: Child Support: Appeal and Error.** Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed by an appellate court de novo on the record, and will be affirmed absent an abuse of discretion.

2. **Child Custody: Appeal and Error.** In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

3. **Modification of Decree: Child Custody: Proof.** Modifying a custody or parenting time order requires two steps of proof. First, the party seeking modification must show by a preponderance of the evidence a material change in circumstances that has occurred after the entry of the previous custody order that affects the best interests of the child. Second, the party seeking modification must prove that changing the child's custody or parenting time is in the child's best interests.

4. **____: ____: ____.** Proof of a material change in circumstances is the threshold inquiry in a proceeding on a complaint to modify, because issues determined in the prior custody order are deemed preclusive in the absence of proof of new facts and circumstances.

5. **Child Custody.** Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action.

6. **Modification of Decree: Words and Phrases.** A material change in circumstances means the occurrence of something which, had it been

known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently.

7. **Visitation: Appeal and Error.** Parenting time determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.

8. **Visitation.** The best interests of the children are the primary and paramount considerations in determining and modifying parenting time.

9. ____. The right of parenting time is subject to continual review by the court, and a party may seek modification of a parenting time order on the grounds that there has been a material change in circumstances.

10. **Modification of Decree: Child Support: Proof.** A party seeking to modify a child support order must show a material change in circumstances which (1) occurred subsequent to the entry of the original decree or previous modification and (2) was not contemplated when the decree was entered.

11. **Modification of Decree: Child Support: Alimony: Good Cause.** Material change in circumstances in reference to modification of child support is analogous to modification of alimony for good cause.

12. **Modification of Decree: Child Support.** Among the factors to be considered in determining whether a material change of circumstances has occurred are changes in the financial position of the parent obligated to pay support, the needs of the children for whom support is paid, good or bad faith motive of the obligated parent in sustaining a reduction in income, and whether the change is temporary or permanent. But, the paramount concern in child support cases, whether in the original proceeding or subsequent modification, remains the best interests of the child.

13. **Attorney Fees.** Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees.

14. ____. Customarily, attorney fees are awarded only to prevailing parties or assessed against those who file frivolous suits.

15. **Divorce: Attorney Fees.** A uniform course of procedure exists in Nebraska for the award of attorney fees in dissolution cases.

Appeal from the District Court for Phelps County: Stephen R. Illingworth, Judge. Affirmed.

Jaclyn N. Daake, of Duncan, Walker, Schenker & Daake, P.C., L.L.O., for appellant.

Nicole M. Mailahn and Allison R. Seiler, of Jacobsen, Orr, Lindstrom & Holbrook, P.C., L.L.O., for appellee.

Pirtle, Chief Judge, and Riedmann and Welch, Judges.

Pirtle, Chief Judge.

## INTRODUCTION

Justin J. Winkler appeals from an order of the district court for Phelps County overruling his request to modify primary physical custody of two children born to the now dissolved marriage between Justin and Crystal R. Winkler, now known as Crystal R. Werner. Justin also challenges the court's order increasing his child support obligation and awarding Crystal a portion of her attorney fees. For the reasons that follow, we affirm.

## BACKGROUND

Justin and Crystal were married in March 2010, and there were two children born to the marriage: a daughter born in 2011 and a son born in 2013. Justin and Crystal divorced pursuant to a decree of dissolution entered in October 2018. The 2018 decree awarded the parties joint legal custody of the children, and Crystal was awarded primary physical custody subject to Justin's parenting time as set forth in an attached parenting plan. Justin was also ordered to pay $684 per month in child support and to maintain health insurance for both children.

Under the 2018 parenting plan, Justin's parenting time included every other weekend, specified holidays, and 6 weeks during the summer. The plan further provided that "Mother and Father understand that the needs of the child(ren) may change as the child(ren) get(s) older and Mother and Father will interpret and apply this Plan in a way that best serves any changing needs of the child(ren)." The plan also provided that "Mother and Father can temporarily change the terms of this Plan as long as they both agree to it."

In October 2019, Justin filed a complaint to modify custody, parenting time, and child support. The complaint alleged that there had been a material change in circumstances since the entry of the 2018 decree, to wit: Justin exercised parenting time beyond that outlined in the prior parenting plan; Crystal relocated, "causing an unstable living situation for the minor children"; Crystal was "romantically involved with an individual who is a major safety concern"; Crystal "continually failed to meet the financial and support obligations for the minor children"; and Justin began carrying both children on his health insurance plan.

In January 2020, Crystal filed an amended answer and counterclaim, denying the pertinent allegations in Justin's complaint and seeking an upward modification of Justin's child support. Crystal also requested that she be awarded reasonable attorney fees and costs. Justin answered Crystal's counterclaim by denying the allegations therein.

A final hearing on the complaint and counterclaim was held in February 2021, after which the court entered an order finding that Justin had failed to prove a material change in circumstances justifying modification of physical custody. The court nevertheless modified the 2018 parenting plan to provide Justin with 8 weeks of summer parenting time, as opposed to the original 6 weeks. The court also recalculated Justin's child support obligation and ordered him to pay $5,000 of Crystal's attorney fees. Justin now appeals.

## ASSIGNMENTS OF ERROR

Justin assigns, restated, that the district court erred in (1) finding that Justin failed to meet his burden to prove a material change in circumstances justifying modification of physical custody, (2) increasing Justin's child support obligation, and (3) ordering Justin to pay a portion of Crystal's attorney fees.

## STANDARD OF REVIEW

[1] Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the

discretion of the trial court, whose order is reviewed by an appellate court de novo on the record, and will be affirmed absent an abuse of discretion. *Lindblad v. Lindblad*, 309 Neb. 776, 962 N.W.2d 545 (2021).

[2] In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Eric H. v. Ashley H.*, 302 Neb. 786, 925 N.W.2d 81 (2019).

## ANALYSIS

*Modification of Physical Custody.*

[3,4] Modifying a custody or parenting time order requires two steps of proof. *Lindblad v. Lindblad, supra*. First, the party seeking modification must show by a preponderance of the evidence a material change in circumstances that has occurred after the entry of the previous custody order that affects the best interests of the child. *Id.* Second, the party seeking modification must prove that changing the child's custody or parenting time is in the child's best interests. *Id.* Proof of a material change in circumstances is the threshold inquiry in a proceeding on a complaint to modify, because issues determined in the prior custody order are deemed preclusive in the absence of proof of new facts and circumstances. *Id.* Accordingly, we first examine whether the court abused its discretion in finding that Justin failed to prove a material change in circumstances affecting the best interests of the children.

[5,6] Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Id.*

In this case, Justin raised a number of grievances ranging from Crystal's choice of romantic partners and her tumultuous financial circumstances to the fact that the children have often shared a bedroom while in Crystal's care. However, there is nothing in the record showing a material change in circumstances that would render Crystal as unfit or that would prove the best interests of the children require that Justin be awarded primary physical custody. In fact, Justin seemed to acknowledge that the children were more or less "happy" and "well adjusted" under the current custody arrangement. Moreover, both parties testified that they have generally been able to communicate well and cooperate with regard to parenting matters. Indeed, the parties have frequently agreed to temporarily alter the terms of the 2018 parenting plan, ultimately resulting in the parties' exercising nearly equal parenting time since the 2018 decree. Even on appeal, Justin emphasizes that he has had "little to no issues communicating effectively with [Crystal] to co-parent and share legal custody since the time of their separation." Brief for appellant at 16.

Despite what appears to be a harmonious and cooperative arrangement, Justin argues that "the record is replete with evidence that material changes regarding the stability, safety, and well-being of the parties' children have occurred since the time of the decree." *Id*. at 12. Justin then identifies a number of events that occurred subsequent to the 2018 decree and argues that "[t]he culmination of each of these changes adds up to materially affecting the children in this action and certainly constitutes a material change in circumstances." *Id*. at 15.

First, Justin points to two of Crystal's former romantic partners, Jeremy Johnson and Tyler Stutheit. With regard to Johnson, the record shows that Crystal moved in with him in mid- to late November 2018. She continued to live with Johnson until she broke up with him following "an altercation" in March 2019. Crystal explained that Johnson was upset about something and began raising his voice and throwing things around the room. While Johnson never harmed Crystal,

she testified that it was a "scary situation," and she added that "[t]hat was the first time I was ever scared of him." Crystal indicated that Johnson had exhibited some "controlling or possessive" behavior prior to that night, but that she had never before witnessed the sort of violent behavior he exhibited that night. The children were not present for the incident, and Crystal ended the relationship immediately thereafter.

With regard to Stutheit, the record shows that Crystal dated him from approximately June to November 2019. Crystal testified that she was aware Stutheit had a criminal record and that she understood it to be related to "a mutual confrontation that resulted in a criminal arrest." Crystal denied that there was ever any form of domestic dispute between her and Stutheit. Crystal introduced Stutheit to the children on one occasion; however, she broke up with Stutheit shortly thereafter because "Justin had an issue with him . . . even though he never brought it up to me personally." Rather, Crystal inferred that Stutheit might be an issue for Justin in light of the allegations Justin raised in his complaint regarding Crystal's romantic relationships.

The district court found that Crystal's relationships with Johnson and Stutheit were not a basis to modify custody, as Crystal had handled those relationships appropriately. We agree. There was no evidence that the children were ever exposed to any form of domestic violence. In fact, the record is largely devoid of evidence as to how Crystal's romantic relationships may or may not have impacted the best interests of the children. General grievances about a custodial parent's choice of romantic partners, standing alone, are not a basis to modify a custody order.

Justin also points to Crystal's living arrangements since the 2018 decree, and he highlights the fact that the children have often shared a room while in Crystal's care. The record shows that Crystal initially resided in a three-bedroom apartment after she and Justin separated in 2016. Crystal and the children resided in that apartment for approximately 2½ years, until they moved in with Johnson in November 2018. After

the March 2019 incident with Johnson, Crystal moved in with her friend, Lindsey Britton, until Crystal could get back on her feet. Crystal testified that she lived with Britton until November 1, 2019, at which point she and the children moved into a two-bedroom house where they continued to reside at the time of the final hearing.

Crystal testified that the children initially each had their own room in the three-bedroom apartment, but they eventually began sharing one room for sleeping and used the third room as a play room. Crystal testified that the children continued to share a room at each subsequent residence; however, she did not recall Justin's ever expressing any concern with regard to that arrangement. Crystal further testified that the children always got along great and that there had never been any issues with them sharing a room. Nevertheless, Crystal acknowledged that the children would need their own rooms eventually, and she expressed her intention to move into a bigger house once that was feasible.

Justin also points to what he described as a "kind of a rough situation" while Crystal was residing with Britton. Justin testified that Britton reached out to him after Crystal moved out, expressing various complaints about Crystal's time there. Specifically, Britton claimed that Crystal still owed her money for rent and other living expenses, as well as some cleaning expenses incurred as a result of Crystal and the children's living there. Crystal, on the other hand, testified that she paid Britton in full prior to moving out of that house. Crystal testified that Britton did not expect her to pay anything for the first couple months after moving out of Johnson's house, but that Crystal eventually began paying rent and contributing to utilities. Crystal further testified that she later helped Britton move out of that house, at which time she also helped Britton clean the house. Indeed, Justin also recalled that Crystal eventually "made square" with Britton and returned to help clean the house when Britton moved out.

Furthermore, as it relates to Crystal's living arrangements, Justin points to the fact that Crystal and the children "are currently in violation of lease [sic] agreement by having pets." Brief for appellant at 15. Crystal confirmed that the lease to her current two-bedroom house does not allow pets and that mevertheless, there are two cats living with Crystal and the children in that house. However, Crystal argues on appeal that her "landlord is aware that she has the cats and has never raised it as a matter of concern." Brief for appellee at 21. In any case, the evidence regarding Crystal's living arrangements does not amount to a material change in circumstances justifying modification of physical custody. Once again, the record is largely devoid of evidence demonstrating how Crystal's various living arrangements actually impacted the best interests of the children.

Justin also points generally to Crystal's financial difficulties since the 2018 decree. Crystal acknowledged her financial difficulties, including the failure to make car payments that resulted in the repossession of her vehicle. However, the record shows that Crystal has been gainfully employed at all times since the 2018 decree, and Crystal emphasized that she has always been able to provide for the children's needs. Indeed, Justin admitted that the children have always been properly fed, clothed, and sheltered while in Crystal's care. The district court found that Crystal "has persevered despite financial difficulties" and "has shown good character and still provided for her children." Under the circumstances of this case, Crystal's financial difficulties do not amount to a material change in circumstances justifying modification of physical custody.

Justin ultimately argues that he "can provide, and has provided, a stable living environment with extensive family support." Brief for appellant at 15. We have no reason to doubt that this is true, but the fact that the children could arguably achieve similar or even somewhat greater stability if Justin had primary physical custody is not a basis to modify an existing custody order. In the end, the court found that "both parties are

good parents but that there has not been a material change in circumstances warranting a modification of physical custody." Upon our de novo review of the record, we cannot say this was an abuse of discretion, and we affirm the court's finding that Justin failed to carry his burden to prove a material change in circumstances justifying modification of physical custody.

*Modification of Parenting Plan.*

While the district court found that modification of physical custody was not warranted, it nevertheless modified the parenting plan to provide Justin with an additional 2 weeks of summer parenting time. Justin argues this created an untenable result on the grounds that the court cannot simultaneously modify parenting time and find that Justin failed to prove a material change in circumstances justifying modification of physical custody. Crystal counters that the court's modification was proper in light of the court's independent responsibility to ensure every parenting plan is in the best interests of the children. Moreover, Crystal points out that the modification "merely formalizes the Parties' informal agreement" regarding summer parenting time. Brief for appellee at 23.

[7-9] Parenting time determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Olander v. McPhillips*, 28 Neb. App. 559, 947 N.W.2d 578 (2020). The best interests of the children are the primary and paramount considerations in determining and modifying parenting time. *Id.* The right of parenting time is subject to continual review by the court, and a party may seek modification of a parenting time order on the grounds that there has been a material change in circumstances. *Id.*

Under the circumstances of this case, we cannot say it was an abuse of discretion to modify the parenting plan to provide Justin with an additional 2 weeks of summer parenting time. While the court did not specifically identify the material

change in circumstances justifying the modification of parenting time, the parties had previously agreed to informally alter the terms of the parenting plan to provide Justin with additional parenting time in the summer. At oral argument, the parties reiterated that the additional summer parenting time reflected a mutual agreement, and neither party indicated that the court's modification of parenting time was not in the best interests of the children. Accordingly, we conclude the court acted within its discretion to modify the parenting plan so as to reflect the present circumstances of the parties.

*Modification of Child Support.*

For purposes of the 2018 decree, the parties stipulated that Justin's monthly income was $4,000. Because the parties simply agreed to that figure, there was no evidence as to the source of Justin's income. In this case, Justin testified that he earned a monthly salary of $4,000 from Winkler, Inc., which is consistent with the stipulation in the 2018 decree. Justin also testified to a number of "in-kind" benefits and other forms of income that were not accounted for in the $4,000 monthly paycheck from Winkler, Inc. For example, the district court specifically noted that Justin resides rent free in a home provided by Winkler, Inc., and he receives nonmonetary compensation from Winkler, Inc., in the form of calves to sell, a fuel card, and a side of beef each year.

While the court mentioned these additional benefits in its final order, it did not assign them a monetary value for purposes of incorporating them in Justin's total monthly income. Rather, the court relied upon Justin's 2018 and 2019 tax returns, in conjunction with Justin's testimony regarding what his 2020 tax return would reflect, to determine that Justin earned an average yearly income of $54,000. Dividing this number by 12 reveals the basis for the court's imputing to Justin a total monthly income of $4,500.

[10-12] A party seeking to modify a child support order must show a material change in circumstances which (1) occurred

subsequent to the entry of the original decree or previous modification and (2) was not contemplated when the decree was entered. *Incontro v. Jacobs*, 277 Neb. 275, 761 N.W.2d 551 (2009). The Nebraska Supreme Court has said that a material change in circumstances in reference to modification of child support is analogous to modification of alimony for good cause. *Id.* Among the factors to be considered in determining whether a material change of circumstances has occurred are changes in the financial position of the parent obligated to pay support, the needs of the children for whom support is paid, good or bad faith motive of the obligated parent in sustaining a reduction in income, and whether the change is temporary or permanent. *Id.* But, the paramount concern in child support cases, whether in the original proceeding or subsequent modification, remains the best interests of the child. *Id.*

On appeal, Justin argues that the district court abused its discretion because there had not been a material change in circumstances occurring subsequent to the entry of the 2018 decree. Justin emphasizes that all of the nonmonetary compensation discussed above "existed at the time of the decree and for many years prior." Reply brief for appellant at 5. It is true that Justin was apparently receiving the calves to sell and the side of beef both before and after the 2018 decree. The record is less clear with regard to the rent-free residence and the fuel card; however, at oral argument, Crystal's counsel seemed to concede that Justin's financial circumstances had not actually changed since the entry of the 2018 decree. Rather, it appears that the evidence in this case simply reflects a more accurate accounting of Justin's income than was stipulated to in the 2018 decree.

Nevertheless, we cannot say it was an abuse of discretion to modify Justin's child support obligation under the circumstances of this case. While the evidence suggests that Justin's actual monthly income remained more or less unchanged, Justin's own child support calculation proposed that his obligation be calculated from a total monthly income of $4,300 as

opposed to the $4,000 figure used in the 2018 decree. Justin's proposed child support calculation also included a $172 deduction for retirement contributions which he testified that he was not making. Moreover, the 2018 child support calculation included a $416 credit for costs associated with the children's health insurance, and Justin testified that he is no longer faced with those costs.

If the court had simply adopted Justin's proposed child support calculation, even including the $172 deduction for retirement contributions that he was not making, the resulting obligation would have been $770 per month. Excluding the $172 deduction for retirement contributions and using Justin's proposed monthly income of $4,300, Justin's modified obligation would have been $782 per month. In either case, Justin's proposed child support calculation results in an increase of more than 10 percent from the stipulated obligation of $684 per month, thus creating a rebuttable presumption of a material change in circumstances justifying modification. The district court ultimately recalculated Justin's child support obligation using his average monthly income from 2018 to 2020, resulting in a modified obligation of $794 per month. Altogether, we cannot say this was an abuse of discretion, and we affirm the district court's upward modification of Justin's child support obligation.

*Attorney Fees.*

[13-15] Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014). Customarily, attorney fees are awarded only to prevailing parties or assessed against those who file frivolous suits. *Id.* A uniform course of procedure exists in Nebraska for the award of attorney fees in dissolution cases. *Id.*

In this case, the court ordered Justin to pay $5,000 of Crystal's attorney fees. The court observed that Crystal

prevailed on the issues of custody and child support and noted the relative economic circumstances of the parties. We cannot say this was an abuse of discretion, and we affirm the court's order that Justin pay $5,000 of Crystal's attorney fees.

## CONCLUSION

For the foregoing reasons, we conclude the record fails to demonstrate an abuse of discretion in any respect. Accordingly, the order of the district court is affirmed.

Affirmed.