IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

KREPEL V. DONNELLY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DIRK M. KREPEL, APPELLANT,

V.

STEPHANEY DONNELLY, NOW KNOWN AS STEPHANEY PETERSON, APPELLEE.

Filed November 29, 2022.    No. A-22-154.

Appeal from the District Court for Lancaster County: JODI L. NELSON, Judge. Affirmed.

Terrance A. Poppe and Anne E. Brown, of Morrow, Poppe, Watermeier & Lonowski, P.C., for appellant.

Adam R. Little, of Nebraska Legal Group, for appellee.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

PIRTLE, Chief Judge.

INTRODUCTION

Dirk M. Krepel appeals from an order of the district court for Lancaster County overruling his complaint for modification of custody. For the reasons that follow, we affirm.

BACKGROUND

Krepel and Stephaney Donnelly, now known as Stephaney Peterson, are the parents of Cole M. Krepel, born in July 2012. The parties were never married. The district court entered an order in November 2018 awarding the parties joint legal and physical custody of Cole. The parenting plan, which was agreed to by the parties and adopted by the trial court, provided for an 8-day/6-day schedule, where Peterson had custody for 8 days, followed by 6 days of custody for Krepel. It also provided that Peterson shall have the final say in all day-to-day decisionmaking relating to Cole,

- 1 -

including choices regarding Cole's education, religious upbringing, medical needs, and extracurricular activities.

In December 2020, Krepel filed a complaint to modify custody seeking primary physical custody of Cole. The complaint alleged that there had been a material change in circumstances since the entry of the November 2018 order for custody, to wit: Peterson and Krepel had been equally sharing parenting, Peterson's lifestyle and living arrangements were not appropriate, and Peterson does not provide adequately for Cole's daily needs and necessities of life. The complaint also alleged that it was in Cole's best interests to award Krepel physical custody.

Peterson filed an answer and counterclaim requesting permission to move to Arizona and an increase in Krepel's child support obligation. Peterson eventually withdrew her request to relocate with Cole to Arizona and at trial she indicated she was not seeking a modification of child support.

At the trial on Krepel's complaint to modify, the evidence showed that Peterson was diagnosed with complex regional pain syndrome (CRPS) in April 2013. CRPS causes Peterson constant pain in her arms, shoulders, and neck. The pain prevents her from working and at times from sleeping. She had not been employed since July 2014. She also has "breakthrough" pain, which is more intense pain. This occurs randomly, but the occurrences are impacted by climate and stress. The CRPS also causes "brain fog" and memory issues, causing her to feel "scattered." She stated that she often makes lists so she does not forget tasks. The CRPS also causes her to be overstimulated at times. Peterson often uses noise-cancelling headphones to help with sensory overload, but she is still able to hear Cole and her other children should issues arise. Peterson's other diagnoses include polycystic ovarian syndrome, which causes painful menstrual cycles; depression; and generalized anxiety disorder. Peterson testified that her medical conditions present some challenges, but they do not prevent her from being able to care for Cole.

Peterson takes multiple prescription medications for her chronic pain, as well as for anxiety. Her medication levels are monitored and tracked by random urine testing. She testified that she was taking the same medications at the time of the modification trial as she was at the time of the original custody order. She also testified that Krepel was fully aware of her medical conditions when the custody order was entered.

In March 2020, the parties agreed to a modified custody arrangement in order to limit COVID-19 exposure between households during the early stages of the pandemic. The parties agreed on essentially a 50/50 arrangement, but the length of time a parent had custody was often predicated on whether someone in either household had been exposed to the virus. As a result, at times one party would have custody for a 14-day period, followed by the other party having custody for 14 days.

On November 3, 2020, Peterson decided she wanted to go back to following the custody order. Her decision followed an incident that occurred that day. In the morning on November 3, Cole was experiencing back pain and Peterson decided not to send him to school. Peterson sent a text to Krepel letting him know Cole was not going to school and the reason why. Krepel told Peterson that he was coming to get Cole and Peterson told him not to come to her house. Subsequently, Krepel's girlfriend, Kaitlin Schneider, and a friend of hers went to Peterson's home. Peterson initially did not answer the door and texted Krepel telling him to leave because she assumed he was outside her house. When Peterson finally answered the door, she was surprised

not to see Krepel. Schneider testified that she told Peterson she was there because she was concerned about Cole. Peterson told her that Krepel's parenting time did not start until later that day and asked her to leave, which she did. This incident ended the modified custody arrangement, and a few days after this incident, Krepel filed his complaint to modify. Krepel testified that the basis for filing his complaint was the November 3 incident.

At the time of trial, Cole was in the third grade at Rousseau Elementary School. Cole also attended Rousseau Elementary for kindergarten and first grade, but the parties agreed to move him to Saint Mark's Lutheran School for second grade because they thought it would be better for him due to the circumstances of the pandemic. During the summer between Cole's second grade year and third grade, Peterson communicated with Krepel about wanting to switch Cole back to Rousseau Elementary for third grade. Krepel was opposed to the change and ultimately Peterson made the decision to move Cole back to Rousseau Elementary. Cole has done well at both schools, but has struggled with reading. Cole's third grade teacher at Rousseau Elementary, Darren Johnson, testified that at the beginning of the school year Cole was below the school district standards for reading. However, Johnson testified that Cole was getting extra help at school with reading and he was working hard and making progress. Johnson also testified that Cole's spelling test scores are up and down, but he was not sure why. Schneider claimed that Cole does better on his spelling tests during the weeks that Krepel has custody.

Peterson testified that Cole has been diagnosed with attention deficit hyperactive disorder by his therapist. She testified that Krepel did not agree with the diagnosis. Krepel testified that Cole needs therapy for his emotional outbursts and he did not think that Cole's current therapist was helping him.

Peterson admitted that she does not always give Krepel much advance notice of Cole's medical and dental appointments and there has been at least one time that she did not notify him of an appointment change. This occurred when Krepel took Cole to an orthodontist appointment and when they arrived, he learned that Peterson had cancelled the appointment and rescheduled it. Peterson admitted that she had rescheduled the appointment and did not tell Krepel, but testified that she forgot to send him an email. Krepel testified that this was an example of Peterson's lack of communication and cooperation. He also testified that Peterson signed Cole up for taekwondo without discussing it with him first. However, he admitted that he had Cole baptized without telling Peterson about it.

Peterson's mother, Debra Mannis, and Peterson's sister, Taylor Donnelly, testified for Krepel. They both testified that Peterson's behavior in the past couple years had become erratic, and that they no longer had a relationship with her. Peterson agreed that she does not have a relationship with her mother or her sister, who both live in California.

Donnelly testified that in the 3 years prior to trial she had become concerned about Peterson's mental health and concerned about Cole continuing to live with her. Donnelly testified that Peterson lied to her family about marrying her current husband. She testified that when Peterson's daughter told family members about Peterson's marriage, Donnelly was concerned that Peterson would physically hurt her daughter for telling the family. Donnelly also claimed that Peterson recently had extramarital affairs with at least three men, one of them being her husband's cousin.

Donnelly also testified that a few years before trial, Cole and his sister were staying with her for a couple weeks in California. Cole got swimmer's ear and Donnelly was unable to contact Peterson by phone or text for a day and a half. Donnelly claimed that Peterson was with one of the men she was having an affair with during this time. Peterson told Donnelly she was in the hospital but Donnelly did not believe her. Peterson presented evidence at trial to show that she was in the hospital during the relevant timeframe. Peterson testified that she terminated contact with Donnelly shortly after this incident.

Donnelly also described another incident in December 2019 where Peterson's son, John, was playing a video game and video chatting with Donnelly's son. Donnelly testified that Peterson stormed into the room and grabbed the phone from John and told Donnelly's son that he was never to speak with John again. Peterson denied that this occurred.

Donnelly described Peterson as volatile, angry, and physical, and that she can be emotionally abusive. She also stated that she believed it was in Cole's best interest to live with Krepel because she was concerned about Peterson's mental state and the pressure she puts on Cole.

Mannis, Peterson's mother, testified that she has not had a relationship with Peterson since April 2021, but prior to then they had a good relationship. Mannis testified that her relationship with Peterson ended because she started putting pressure on Peterson to repay her $30,000 she had loaned her. Mannis stated that Peterson ignored the requests for repayment and blocked Mannis' phone number.

Contrary to Mannis' testimony, Peterson testified that her relationship with her mother ended because Mannis asked her for money after Peterson's worker's compensation case settled in November 2020. Peterson refused to give her any money, which upset Mannis.

The last time Mannis and Peterson saw each other was in April 2019 and their last phone call was in October 2021. They have had text communication since then. Mannis testified that in the 18 months before trial she had discussions with Peterson about Peterson having extramarital affairs. Mannis also testified that Peterson texted her about two of her children lying to her about having a TikTok account and when she found out she slapped her daughter four times across the face and her son "got the belt." Mannis further testified that Peterson said she took the children's doors off their rooms, put their mattresses on the floor, and called them inmate one and two. She also testified that there have been several incidents where she was talking to one of Peterson's children on the phone and she heard Peterson scream at her children. Mannis testified that Peterson is not the same person she used to be and needs to get help.

Krepel testified that he filed his complaint to modify in response to what occurred on November 3, 2020, and Peterson's decision to return to following the custody order. He testified that other concerns that caused him to file the complaint to modify were Peterson's erratic, hysterical, and irrational behavior; changes in Peterson's physical appearance, which she explained were caused by her medications; and information that came from Peterson's mother.

Krepel also presented testimony from several witnesses who testified that Krepel is a loving and supportive father to Cole.

Following trial, the court entered an order finding that Krepel failed to meet his burden of proof to demonstrate a material change in circumstances to warrant a change in custody. It overruled Krepel's complaint to modify, as well as Peterson's countercomplaint, and dismissed the action.

## ASSIGNMENT OF ERROR

Krepel assigns that the district court erred in failing to modify custody of Cole.

## STANDARD OF REVIEW

Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed by an appellate court de novo on the record, and will be affirmed absent an abuse of discretion. *Winkler v. Winkler*, 31 Neb. App. 162, 978 N.W.2d 346 (2022).

In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

## ANALYSIS

Krepel assigns that the district court erred in failing to modify custody of Cole. Modifying a custody or parenting time order requires two steps of proof. *Winkler v. Winkler, supra.* First, the party seeking modification must show by a preponderance of the evidence a material change in circumstances that has occurred after the entry of the previous custody order that affects the best interests of the child. *Id.* Second, the party seeking modification must prove that changing the child's custody or parenting time is in the child's best interests. *Id.* Proof of a material change in circumstances is the threshold inquiry in a proceeding on a complaint to modify, because issues determined in the prior custody order are deemed preclusive in the absence of proof of new facts and circumstances. *Id.* Accordingly, we examine whether the court abused its discretion in finding that Krepel failed to prove a material change in circumstances affecting the best interests of the child.

Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Winkler v. Winkler, supra.* A material change in circumstances means the occurrence of something which, had it been known to the trial court at the time of the initial decree, would have persuaded the court to decree differently. See *id.*

Krepel pled in his complaint to modify that three material changes in circumstances had occurred since November 2018, when the order for custody was entered. First, Krepel alleged that the equal parenting time arrangement the parties had been exercising between March and November 2020 was a material change in circumstance. Both parties testified they came to this agreement as a result of the pandemic and they were trying to minimize COVID-19 exposures between households. In November 2020, Peterson decided she no longer wanted to continue this arrangement and insisted the parties return to the court-ordered parenting plan.

The custody order provides that Peterson has custody for 8 days, followed by Krepel having custody for 6 days. As the trial court found, this arrangement does not provide for completely equal parenting time, but it is close to it. The agreement to deviate from the custody order and operate under an equal arrangement was a change, but not a material change. It arose as a result of unique circumstances presented by the pandemic and there is no evidence that either of the parties ever intended for it to be a permanent arrangement. The fact that the parties temporarily exercised equal

parenting time rather than the 8-day/6-day arrangement in the custody order is not a material change in circumstances.

Second, Krepel alleged in his complaint to modify that there was a material change in circumstances in that Peterson's lifestyle and living arrangements were not appropriate for Cole. Krepel tried to show that Peterson was unable to care for Cole because of her health problems. Peterson testified that she is in constant pain and occasionally has "breakthrough" pain where it becomes difficult to do simple, daily tasks. She also suffers from anxiety and depression. Peterson testified that her medical issues do present challenges, but they do not prevent her from being able to take care of Cole and there was no evidence to indicate otherwise. Her medications are closely monitored and the noise-cancelling headphones do not prevent her from being able to hear Cole. Further, the evidence shows that Peterson's health problems existed before the original custody order was entered and were known to Krepel at the time. See *Winkler v. Winkler*, 31 Neb. App. 162, 978 N.W.2d 346 (2022) (party seeking modification must show material change in circumstances that occurred after entry of previous custody order that affects best interests of child).

Krepel also tried to show that Peterson's lifestyle was not appropriate because she had been having affairs and on one occasion her affair took priority over Cole. Peterson's mother and sister both testified that over the past 3 years Peterson had extramarital affairs. Further, Donnelly testified that when Cole was staying with her in California and became ill, she was unable to contact Peterson because she was with one of the men she was having an affair with. However, Peterson presented evidence to show that she was in the hospital during the timeframe Donnelly could not reach her. And further, at the time of trial, Peterson had not had a relationship with her mother and sister for some time and very little contact. There was also nothing to indicate that Peterson's alleged affairs affected Cole in any way.

Krepel also claims there was evidence of abusive behavior by Peterson toward her children in the past 3 years. Mannis testified about a text message she received from Peterson stating how she reacted after she found out two of her children had lied about having a TikTok account. Mannis also testified that she had heard Peterson scream at her children. Donnelly testified that she was concerned Peterson might physically hurt her daughter after the daughter told the family that Peterson had gotten married. She also testified about Peterson taking Cole's phone and telling Donnelly's son who was on the other end that he was never to talk to Cole again. Peterson denied that this occurred.

The district court had the opportunity to hear and weigh the credibility of the testimony adduced regarding Peterson's lifestyle and living arrangements. Based on the court's ultimate findings, it is apparent that the court found Peterson's testimony to be more credible, a finding we do not question here. As such, we find no abuse of discretion in the trial court's failure to find that Krepel had proven a material change of circumstance with respect to Peterson's lifestyle or living arrangements.

Finally, Krepel alleged in his complaint to modify that there was a material change in circumstances in that Peterson does not adequately provide for Cole's daily needs and necessities of life. There is no evidence that Peterson has not adequately provided for Cole's daily needs and necessities. Krepel argues, however, that Cole's educational and behavioral needs are no longer being met. This allegation is based on Krepel's disagreement with several decisions Peterson

made. Krepel argues that Peterson unilaterally made the decision to transfer Cole from Saint Mark's Lutheran School back to Rousseau Elementary, where he claims his academic performance had significantly declined. Peterson communicated with Krepel about wanting Cole to switch back to Rousseau Elementary for third grade. Krepel was opposed to the change and Peterson made the decision to move Cole back to Rousseau Elementary. Cole has done well at both schools, but has struggled with reading. Cole's third grade teacher testified that Cole was getting extra help in reading and he was making progress.

Krepel also did not agree with Peterson's decision to keep Cole home from school when he had back pain and not take him to the doctor. He also did not agree with the therapist Peterson selected for Cole. He did not agree with the therapist's diagnosis of attention deficit hyperactive disorder and he did not believe she was helping him with his emotional outbursts.

All of these decisions are ones Peterson had ultimate authority to make under the original custody order as they have to do with medical care and education. That provision in the original parenting plan was agreed to by the parties and approved by the court when it entered the order in 2018.

Based upon the evidence presented, we conclude the trial court did not abuse its discretion in finding that Krepel failed to prove a material change in circumstances occurred after the entry of the previous custody order affecting the best interests of Cole. Even when all of his alleged material changes in circumstances are considered together, there is no material change in circumstance to warrant modification of physical custody.

## CONCLUSION

For the foregoing reasons, we conclude that the trial court did not abuse its discretion in denying Krepel's complaint to modify custody. Accordingly, the order of the trial court is affirmed.

AFFIRMED.