Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/07/2026 08:07 AM CDT

DORINA MAHLER, APPELLEE, V. WILLIAM N.
MAHLER, APPELLANT.

___ N.W.3d ___

Filed April 7, 2026.    No. A-25-175.

1. **Modification of Decree: Child Custody: Visitation: Child Support: Appeal and Error.** Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion.
2. **Child Custody: Appeal and Error.** In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.
3. **Modification of Decree: Child Custody: Proof.** Ordinarily, custody and parenting time of a minor child will not be modified unless there has been a material change in circumstances showing that the best interests of the child require modification.
4. \_\_\_\_: \_\_\_\_: \_\_\_\_. Modifying a custody or parenting time order requires two steps of proof. First, the party seeking modification must show by a preponderance of the evidence a material change in circumstances that has occurred after the entry of the previous custody order and that affects the best interests of the child. Second, the party seeking modification must prove that changing the child's custody or parenting time is in the child's best interests.
5. **Modification of Decree: Child Custody: Words and Phrases.** A material change in circumstances is the occurrence of something that, if it had been known at the time the most recent custody order was entered, would have persuaded that court to decree differently.
6. **Modification of Decree: Proof.** Proof of a material change in circumstances is the threshold inquiry in a proceeding on a complaint to modify.

7. **Child Custody.** When determining the best interests of the child in the context of custody, a court must consider, at a minimum, (1) the relationship of the minor child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse. Other relevant considerations for determining best interests include stability in the child's routine, minimalization of contact and conflict between the parents, and the general nature and health of the individual child. No single factor is determinative, and different factors may weigh more heavily in the court's analysis, depending on the evidence presented in each case.

8. \_\_\_\_. The one constant in any proceeding involving a child is that the child's best interests are always the standard by which any custody or parenting time determination is made.

9. **Constitutional Law: Parental Rights.** A parent's right to raise his or her child is constitutionally protected.

10. **Child Custody.** Nebraska law neither favors nor disfavors any particular custody arrangement and instead requires all such determinations to be based on the best interests of the child.

Appeal from the District Court for Douglas County: LeAnne M. Srb, Judge. Affirmed as modified.

Desirae M. Solomon for appellant.

Ryan M. Hoffman, of Bressman, Hoffman, Jacobs & Quandt, for appellee.

Riedmann, Chief Judge, and Pirtle and Freeman, Judges.

Pirtle, Judge.

## INTRODUCTION

William N. Mahler appeals from an order of the district court for Douglas County modifying provisions in the parties' parenting plan. He challenges multiple provisions and alleges the trial court should have adopted his proposed parenting plan. Based on the reasons that follow, we affirm as modified.

BACKGROUND

William and Dorina Mahler are the parents of one minor child, Benjamin Mahler, born in 2014. A decree of dissolution was entered on December 4, 2019. The decree incorporated an agreed-upon parenting plan, which awarded the parties joint legal and joint physical custody with a week-on-week-off regular parenting schedule, as well as a midweek overnight visit for the parent who does not have physical custody that week.

Dorina filed a complaint to modify on December 23, 2022, alleging that material changes in circumstances occurred that would warrant a change in legal and physical custody, specifically, William was not allowing Benjamin to participate in extracurricular activities and other social events, he was unavailable to Benjamin during his parenting time, he was causing alienation between Dorina and Benjamin, and he had not paid his portion of the shared expenses for Benjamin since the decree was entered. Dorina requested sole legal and sole physical custody of Benjamin. William subsequently filed an answer and counterclaim for modification, also requesting sole legal and sole physical custody of Benjamin.

Prior to trial, the court was informed that physical custody was not at issue and should remain as set forth in the decree, except as to the issue of midweek visitation that was submitted to the court. Evidence was adduced as to the issue of legal custody, including certain issues the parties had been unable to agree on.

One issue of dispute between the parties was which school Benjamin should attend for middle school and high school. Benjamin was in fifth grade at the time of trial, which was the last grade level at his school, requiring him to go to a different school the next school year. Dorina testified that it was in Benjamin's best interests to stay in the Millard Public School District because he had the most friends there and that because he was experiencing a lot of stress at home, the stress of a new school with no friends would make it more difficult for him. Dorina wanted him to attend Andersen Middle

School and then Millard South High School. Dorina purchased a house in 2020, and it was a 5-minute drive, or a 10-minute walk, to Andersen Middle School from her house.

William testified that he wanted Benjamin to attend Kiewit Middle School, which is also in the Millard Public School District. He stated it takes 7 minutes to drive to that school from his house. He did not know how far or how long it would take to drive to Andersen Middle School from his house. William believed it was in Benjamin's best interests to attend Kiewit Middle School because it was less likely that he would have to make all new friends, since the friends he had in William's neighborhood would be attending Kiewit Middle School. He wanted Benjamin to attend Millard North High School for the same reason. William acknowledged that the curriculum at Andersen Middle School is "largely the same" as the curriculum at Kiewit Middle School.

William also testified that he believed Millard South High School "had a lot of issues" compared to Millard North High School, and that Millard North is the better school academically. He stated that Millard South's dual enrollment for college classes rate is "maybe like 19 percent" compared to Millard North High School's 48 percent.

Regarding extracurricular activities, Dorina testified that Benjamin was not participating in any at the time of trial. He was participating in band, but that was during the school day. Dorina wanted him to participate in activities outside of school. She stated that William refused to let Benjamin participate in any extracurricular activities during his parenting time. Dorina tried to find activities that did not overlap with William's parenting time, but it was difficult to find any. At one time, Dorina signed Benjamin up for Boy Scouts and took him to meetings during her parenting time. She stated she offered to take Benjamin to Boy Scouts or other activities during William's parenting time if he did not want to take him, but William refused to deviate from his parenting time.

Dorina also admitted that William never agreed to Benjamin's joining Boy Scouts.

William testified that at one point he agreed to let Benjamin join the robotics club that met in the morning before school, but he did not take Benjamin during his weeks of parenting time. He testified he never agreed to Benjamin's joining Boy Scouts. He also told Dorina he would not agree to Benjamin's playing soccer.

There was also a conflict between the parties regarding Benjamin's cell phone. Dorina testified that Benjamin had a phone that she paid for and that she installed parental controls on the phone, including "Bark" and "My Family." She testified that these parental controls allowed her to track the location of Benjamin's phone. Dorina stated she had occasionally checked Benjamin's location during William's parenting time.

William testified that he believed Dorina was using Benjamin's phone to track him during William's parenting time. He stated that Dorina had contacted him during his parenting time and asked why Benjamin was at a certain location. He testified that Dorina has also reached out to third parties to check on Benjamin's whereabouts based on his phone's location.

There was testimony by the parties that they were unable to work together regarding Benjamin's medical matters. Dorina testified that she wanted Benjamin to go to counseling because he was struggling with anxiety, relationships, and anger management and was not wanting to go to school. There was no agreement reached on this issue.

Dorina learned that Benjamin was going to physical therapy when she received an explanation of benefits from her health insurance company. William did not tell her that Benjamin was going to physical therapy, and William was not allowing Benjamin to go to sessions during Dorina's parenting time.

William stated that he informed Dorina when Benjamin's doctor referred him to physical therapy. He also testified that

he had recently informed her of a change in Benjamin's dental appointment.

The trial court ordered it was in Benjamin's best interests that the parties continue to share joint legal and joint physical custody and maintain the current schedule for parenting time and holidays as outlined in the parenting plan in the decree. However, the trial court found that there had been material changes in circumstances since the entry of the decree to warrant modifications to certain provisions. The material changes included in part:

> [Dorina] and [William] struggle to communicate effectively to share information and to make joint decisions on issues affecting the best interests of the minor child such as the child's participation in social events and extracurricular activities, participation in therapy as prescribed by the child's primary care physician, and which Millard school he will attend for middle and high schools.

The court also modified child support and child-related expenses.

## ASSIGNMENTS OF ERROR

William assigns the trial court erred in (1) violating his due process rights when it found that the parties agreed to follow Benjamin's treating doctor's recommendations and that the parties agreed they will not attempt to subpoena the testimony of the treating doctors, counselors, dentists, orthodontists, et cetera, or their records for a disposition or a court hearing of any kind for any reason; (2) deciding that if there is a disagreement regarding the choice of providers outside the current treating professionals, the parties will defer to the recommendation of the professional who made the recommendation; (3) ordering Benjamin to attend schools based on Dorina's address only, instead of Benjamin's best interests in attending schools with a better academic reputation, a better support network, familiarity, and less potential for disruption; (4) ordering Benjamin to attend summer school when there

was no testimony or evidence regarding Benjamin's attending summer school and delegating the authority to determine if he attends summer school to a third party; (5) ordering that a parent can unilaterally enroll Benjamin in an activity during the other parent's parenting time and not ordering that the parties shall discuss any school-related and extracurricular activities that span during both parents' time; (6) determining Dorina will have unilateral authority to track William and third parties through Benjamin's phone during William's parenting time; and (7) failing to find William's proposed parenting plan was in Benjamin's best interests.

## STANDARD OF REVIEW

[1] Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion. *Jones v. Colgrove*, 319 Neb. 461, 24 N.W.3d 1 (2025).

[2] In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Taylor-Couchman v. DeWitt-Couchman*, 29 Neb. App. 950, 964 N.W.2d 320 (2021).

## ANALYSIS

[3,4] Ordinarily, custody and parenting time of a minor child will not be modified unless there has been a material change in circumstances showing that the best interests of the child require modification. *Lindblad v. Lindblad*, 309 Neb. 776, 962 N.W.2d 545 (2021). Modifying a custody or parenting time order requires two steps of proof. *Id.* First, the party seeking modification must show by a preponderance of the evidence a material change in circumstances that has occurred after the entry of the previous custody order and that affects the best interests of the child. *Id.* Second, the party seeking

modification must prove that changing the child's custody or parenting time is in the child's best interests. *Id.*

[5,6] A material change in circumstances is the occurrence of something that, if it had been known at the time the most recent custody order was entered, would have persuaded that court to decree differently. *Conley v. Conley*, 33 Neb. App. 98, 11 N.W.3d 671 (2024). Proof of a material change in circumstances is the threshold inquiry in a proceeding on a complaint to modify. See *Winkler v. Winkler*, 31 Neb. App. 162, 978 N.W.2d 346 (2022).

[7,8] When determining the best interests of the child in the context of custody, a court must consider, at a minimum, (1) the relationship of the minor child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse. *Jones v. Jones*, 305 Neb. 615, 941 N.W.2d 501 (2020). Other relevant considerations include stability in the child's routine, minimalization of contact and conflict between the parents, and the general nature and health of the individual child. *Id.* No single factor is determinative, and different factors may weigh more heavily in the court's analysis, depending on the evidence presented in each case. *Id.* The one constant in any proceeding involving a child is that the child's best interests are always the standard by which any custody or parenting time determination is made. *Id.*

*Health Care Decisions.*

William's first two assignments of error are based on a provision in the order of modification involving Benjamin's health care. The provision provides:

> **E. HEALTHCARE DECISIONS:** Both parents agree to follow [Benjamin's] treating doctor's and dentist's

treatment recommendations. Parents will seek treatment for the child in good faith, solely to maintain and improve the child's well-being. Parents will alternate scheduling regular check-ups for the child and provide each other ample notice of any upcoming appointments; [William] shall schedule appointments during his parenting time during even years; [Dorina] will schedule appointments during her parenting time during odd years. Parents are responsible for providing transportation for the child to medical, dental, and counseling appointments with priority given to the parent on duty on the day of the appointment unless they make other arrangements in writing. Parents agree that they will not attempt to subpoena the testimony of the treating doctors, counselors, dentists, orthodontists, etc. or their records for a disposition or a court hearing of any kind for any reason. Parents agree that [Benjamin] will not change healthcare providers without them discussing such changes via Our Family Wizard. If there is disagreement regarding the choice of providers outside the current treating professionals, the parties will defer to the recommendation of the professional who made the recommendation.

William first assigns that the trial court erred in violating his due process rights when it found that the parties agreed to follow Benjamin's treating doctor's and dentist's recommendations and that the parties agreed they will not "attempt to subpoena the testimony of the treating doctors, counselors, dentists, orthodontists, etc., or their records for a disposition or a court hearing of any kind for any reason."

[9] William's second assignment of error related to health care alleges that the trial court erred in deciding that if there is a disagreement regarding the choice of providers outside the current treating professionals, the parties will defer to the recommendation of the professional who made the recommendation. William contends that the parties did not agree to these modifications as the trial court indicated and that there

was no evidence that such modifications were in Benjamin's best interests. We agree, and find the trial court's imposition of these provisions is not supported by the record and is an abuse of discretion. We understand the trial court's frustration with the parties given their multiple motions and court filings; however, the health care provisions went too far. We note that a parent's right to raise his or her child is constitutionally protected. See *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015). Consequently, we modify the court's order and substitute the following provision in place of the health care provision quoted above:

> **E. HEALTHCARE DECISIONS:** Parents will seek treatment for the child in good faith, solely to maintain and improve the child's well-being. Parents will alternate scheduling regular check-ups for the child and provide each other ample notice of any upcoming appointments; William shall schedule appointments during his parenting time during even years; Dorina will schedule appointments during her parenting time during odd years. Parents are responsible for providing transportation for the child to medical, dental, and counseling appointments with priority given to the parent on duty on the day of the appointment unless they make other arrangements in writing. Parents agree that the child will not change healthcare providers without them discussing such changes via Our Family Wizard. If there is disagreement regarding the choice of providers outside the current treating professionals, the parties shall attempt to minimize repeated litigation by using the mediation process outlined in Nebraska's Parenting Act prior to resorting to litigation and only utilizing judicial intervention as a last resort.

*School Choice Decisions.*

William assigns that the trial court erred in ordering Benjamin to attend schools based on Dorina's address only, instead of considering Benjamin's best interests in attending

schools with better academic reputations, better support networks, familiarity, and less potential for disruption. The school choice provision in the order for modification provides: "[Benjamin] shall be enrolled in Millard Public School District schools as determined by [Dorina's] address (Andersen Middle School and Millard South High School) unless the parents agree otherwise . . . ."

At the time of trial, Benjamin was in the fifth grade and the following school year he would start middle school. Dorina and William did not agree on which middle school or high school Benjamin would attend. Dorina wanted Benjamin to attend Andersen Middle School based on the proximity of the school to her house. She also believed it would be less stressful for Benjamin than at another school. William believed it was in Benjamin's best interests to attend Kiewit Middle School because it was less likely that he would have to make all new friends. He wanted Benjamin to attend Millard North High School for the same reason. William believed Millard South "had a lot of issues" compared to Millard North, and that Millard North was the better school academically.

William testified that he researched the school options for Benjamin, but he did not present any evidence to support his allegations that one middle school or one high school was academically better than another. He does not explain what type of research he did or where his dual enrollment numbers for both high schools came from. Further, he admitted that Kiewit Middle School's curriculum is "largely the same" as the curriculum at Andersen Middle School. In addition, the schools that each party favored were in the same school district. We determine the trial court did not abuse its discretion in ordering that Benjamin would attend the schools that Dorina preferred.

*Summer School Attendance.*

The provision in the order for modification regarding summer school attendance states in part: "[Benjamin] shall be

allowed to participate in summer school if the child asks to participate, he is advised to participate in summer school by the school officials, if at least one parent can cover the cost, or if he qualifies for a scholarship or free attendance."

William assigns the trial court erred in ordering Benjamin to attend summer school, when there was no testimony or evidence regarding Benjamin's attending summer school, and in delegating the authority to determine if he attends summer school to a third party. He argues that without any evidence, the trial court has directed Benjamin to participate in summer school. He suggests that because Benjamin will be attending public school, "common-sense dictates there is free access to summer school." Brief for appellant at 32. And therefore, the order reads that Benjamin shall attend summer school every year since it is free through public education. William suggests this deprives the parties of the fundamental right to determine Benjamin's educational needs and delegates the decision on whether he will participate in summer school to school officials.

We disagree with William's understanding of the summer school provision. The trial court did not order Benjamin to attend summer school, nor did it delegate the authority to determine his attendance to a third party. The provision regarding summer school states, in part, "[Benjamin] shall be *allowed to participate* in summer school if the child asks to participate, [or] he is advised to participate in summer school by the school officials . . . ." (Emphasis supplied.) The above language creates the option for Benjamin to attend summer school in the event he wants to attend, or if he needs to attend for academic success. The provision does not obligate the parties to send Benjamin to summer school, but, rather, it aims to prevent future conflict between the parties while upholding the best interests of Benjamin. We conclude the trial court did not abuse its discretion by including this provision in the order of modification.

*School-Related and/or Extracurricular Activities.*

William assigns the trial court erred in ordering that a parent can unilaterally enroll Benjamin in an activity during the other parent's parenting time and in not ordering that the parties shall discuss any school-related and extracurricular activities that occur during both parents' time. The provision at issue states:

> Parents agree to discuss any school-related and extracurricular activities that span during both parents' time . . . . [Benjamin] shall be allowed to be in at least one extracurricular activity enrolled by [Dorina] and/or [William]. This would total of [sic] two (2) activities at a time, one (1) chosen by [Dorina] and one (1) chosen by [William] unless the parents agree otherwise . . . . Additionally, either parent can enroll the child in activities that happen only during their parenting time, that do not conflict with existing activities, and that they pay for on their own.
>
> . . . .
>
> Parents will provide the transportation for the child to and from extracurricular activities with priority given to the parent on duty unless they agree otherwise in writing. If one party is unwilling to take [Benjamin] to the activity, the other parent will be allowed to pick up and take to the activity and return the minor child to the other parent when the activity is over.

William argues that this provision allows Dorina to dictate and withhold parenting time from William for an unagreed-upon activity and is an improper delegation of the court's responsibility and a parent's right to parent his or her child as the parent sees fit. He contends that a parent should not be allowed to schedule an activity that occurs during the other parent's time without the parent's express consent.

First, the provision states that the parties will discuss any school-related and extracurricular activities that occur during both parties' parenting time. Next, the provision applies equally to both parties. William can enroll Benjamin in an

activity that occurs during Dorina's parenting time, just as Dorina can enroll Benjamin in an activity that occurs during William's parenting time. And further, the provision limits each parent to choose only one activity that affects the other parent's time, unless the parties agree otherwise. In addition, if the parent with custody for the week does not want to take Benjamin to the activity the other parent chose, the other parent can pick up Benjamin, take him to the activity, and return him to the parent with custody that week.

It was clear from the evidence that the parties have different opinions and ideas about Benjamin's participation in extracurricular activities. Therefore, it was necessary for the trial court to make a decision that would resolve the ongoing conflict between the parties. Allowing each party to enroll Benjamin in one extracurricular activity that overlaps with the other party's parenting time will not significantly impede either party's parenting time with Benjamin. The provision supports Benjamin's best interests as it allows him to participate in extracurricular activities without the conflict between his parents. This assignment of error fails.

*Benjamin's Phone.*

Next, William assigns the trial court erred in determining Dorina will have unilateral authority to track William and third parties through Benjamin's phone during William's parenting time. The provision in the order of modification provides: "The Minor Child, Benjamin, shall use the phone provided by [Dorina] to communicate with both parents, siblings, friends, etc. unless parents agree otherwise . . . . Both parents shall have access to any safety monitoring software installed on child's phone . . . ."

Dorina admitted that she had used a tracking application on Benjamin's phone to track his location during William's parenting time. William claims that Dorina has "boundary issues" and that Dorina, with the only authority to install any tracking

device, will continue to track Benjamin during William's parenting time.

The trial court did not order that Dorina would have unilateral authority to track William and third parties through Benjamin's phone. Rather, the court ordered that both parties were permitted access to any safety monitoring software on Benjamin's phone. Both parties were given equal access to monitor Benjamin's location. It is in Benjamin's best interests for both of his parents to be able to locate him, especially as he gets older and has more independence. The trial court did not abuse its discretion by including this provision.

*William's Proposed Parenting Plan.*

Finally, William assigns that the trial court erred in failing to find that his proposed parenting plan was in Benjamin's best interests and in failing to adopt it.

[10] Nebraska law neither favors nor disfavors any particular custody arrangement and instead requires all such determinations to be based on the best interests of the child. See *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019). Further, in child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Taylor-Couchman v. DeWitt-Couchman*, 29 Neb. App. 950, 964 N.W.2d 320 (2021).

The trial court heard and considered all the evidence presented by both parties before reaching its decision. As in most modification cases, there was conflicting evidence presented by the parties on many issues. We give weight to the trial court's decision to not adopt William's proposed parenting plan. The court apparently found that Dorina's testimony was more credible and that William's proposed parenting plan was not in Benjamin's best interests. This assignment of error fails.

## CONCLUSION

We conclude the trial court abused its discretion in the provision regarding health care decisions for Benjamin, and we modify the provision as set forth in the opinion. The remainder of the trial court's order of modification is affirmed.

Affirmed as modified.